**Leonard LOTT, Plaintiff,**

v.

**Donald SELSKY, et al., Defendants.**

**No. 89 Civ. 8544 (RWS).**

United States District Court,
S.D. New York.

Sept. 19, 1990.

Leonard Lott, Stormville, N.Y., plaintiff pro se.

Robert Abrams, Atty. Gen. of the State of N.Y. by Ira Halfond, Asst. Atty. Gen., of counsel, New York City, for defendants.

### OPINION

SWEET, District Judge.

Plaintiff *pro se,* inmate Leonard Lott ("Lott"), has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, for a declaration of the abandonment of certain of his claims as set

forth below, and for a motion in limine. Defendants Donald Selsky ("Selsky"), Director of Special Housing and Inmate Disciplinary Programs for the New York State Department of Correctional Services ("DOCS"), Charles J. Scully ("Scully"), Superintendent at Green Haven Correctional Facility ("Green Haven"), and Joseph A. Demskie ("Demskie"), Deputy Superintendent at Green Haven, each who are employed by DOCS (the "DOCS defendants"), cross-move for summary judgment. For the reasons set forth below, the DOCS Defendants' cross-motion for summary judgment is granted. Lott's motion for a declaration of abandonment is granted, his summary judgment motion is denied, and the motion in limine is, accordingly, not reached.

## Prior Proceedings

Lott commenced this action on December 26, 1989, pursuant to 42 U.S.C. § 1983, alleging that the DOCS defendants violated his constitutional rights at a Tier III hearing (the "hearing"). The DOCS Defendants answered, both sides conducted discovery, proposed pre-trial orders were exchanged, and on May 25, 1990 Lott moved for summary judgment. The DOCS Defendants cross-moved for summary judgment on June 12, and Lott replied on June 22, 1990. The Motion in Limine was also filed on June 14, 1990. These motions and the supporting documents from both sides were considered fully submitted as of July 6, 1990.

## Facts

On October 29, 1989 at approximately 8:17 p.m., Larry Monroe ("Monroe"), an inmate at Green Haven was seriously assaulted by inmates and required immediate medical treatment at a local hospital. Correction Officers ("C.O.") Bunts and Rarer were on duty in C-cell block where the assault occurred. As a result of this incident, Sergeant Bobbie Jo LaBoy ("LaBoy"), who was on duty in C-cell block at the time of this incident, conducted an investigation to determine what occurred and to identify the assailants. LaBoy had conversations with three confidential informants: one who provided the nicknames of the assailants, one who provided the cell locations of the assailants, and one, an eyewitness, who, together with the other two, viewed inmate photographs and identified the plaintiff as one of the assailants.

On November 1, 1989, LaBoy prepared an inmate misbehavior report charging Lott with violating the following DOCS Rules: 100.10 (assault); 104.11 (violent conduct); and 116.10 (property damage or loss). Lott selected counselor Donnelly to assist him in preparing for the hearing. Defendant Demskie was designated as the hearing officer to conduct a hearing on these charges.

Demskie commenced the hearing on November 6, 1989.[1] Lott pled not guilty to the charges. Prior to Lott's plea, Demskie explained to Lott that he had a right to call witnesses on behalf and a right to offer documentary evidence. Earlier, Lott signed a document which named individuals he wanted interviewed as potential witnesses—Monroe, Bunts, and LaBoy. During the hearing, Lott said that he only intended to call Bunts and LaBoy, both of whom testified.

On November 13, 1989, Demskie attempted to call Monroe as Lott's witness because of Demskie's misimpression that Lott wanted Monroe to testify. Monroe refused to testify in Lott's presence and acknowledged his refusal in writing. Demskie's efforts became moot when Lott stated that he did not wish Monroe to testify. Accordingly, except for Lott's request to examine LaBoy and Bunts, the hearing transcript and prison records do not show that plaintiff requested additional witnesses and Lott no longer contests this point.

Lott made only one request that was denied by Demskie, a request to have the Muslim Minister, the Iman, investigate the assault. Demskie denied this request because an investigation concerning inmate misbehavior is not a responsibility of a

---

1. The hearing was electronically recorded, and the portions which are not deemed confidential were submitted to the court.

religious or spiritual leader, such as the Iman. Demskie also determined that La-Boy had investigated fully the incident, and Lott had an opportunity to have an inmate assistant, counselor Donnelly, conduct an investigation on Lott's behalf. Lott does not contest this denial.

Lott was provided the opportunity to tender documentary evidence and to call witnesses on his behalf. Not only did Lott testify, but he offered the testimony of Bunts and LaBoy as well as documentary evidence consisting of a phone procedure Lott had created and a document entitled "INVESTIGATION" which Lott defined as an "affidavit" signed by inmates. During the hearing, the transcript reflects that Lott never asked that the individuals who signed the "INVESTIGATION" document be interviewed or called as witnesses, nor did Demskie seek to question or investigate this document. Demskie received Lott's document entitled "INVESTIGATION" into evidence and considered it, among all the evidence, before rendering a decision.

On November 13, 1989, Demskie conducted an *in camera* hearing to examine LaBoy concerning her investigation and to examine an eyewitness to the assault. LaBoy and the other confidential witness testified out of the presence of Lott to ensure their safety and the safety of LaBoy's confidential sources, a transcript of which was offered to the court. LaBoy explained how she conducted her investigation, and that on October 30, 1989, one of her confidential sources provided her with the nicknames of the participants. In addition, another inmate provided her with the cell locations of the participants which correlated with the first confidential source's names. Then, both confidential sources viewed photographs of these inmates and identified the participants—including the plaintiff. On October 31, 1989, a third confidential source, an eyewitness who also testified at the *in camera* hearing, also identified the plaintiff from a photograph. LaBoy also testified how she had successfully relied upon her confidential sources on earlier occasions. Lott does not contest the *in camera* review of the sources' credibility.

On November 14, 1989, upon a complete review of the entire record, including Lott's evidence, Demskie found plaintiff guilty of violating DOCS Rules 100.10 (assault) and 104.11 (violent conduct) and not guilty of violating Rule 116.10 (property damage or loss). Accordingly, Demskie imposed a penalty of confining Lott in a Special Housing Unit ("SHU") for 180 days as well as 180 days loss of telephone privileges upon release from SHU.

Demskie advised Lott of his right to appeal directly to the Commissioner of DOCS within thirty days and provided him with an appeal form. Plaintiff prepared a letter requesting an appeal to defendant Selsky. Selsky is the DOCS Commissioner's designee to review Tier III disciplinary hearings. Selsky is knowledgeable in the procedures and law concerning Tier III hearings, especially the use of a confidential informant's testimony. Selsky received Lott's letter to appeal his hearing on November 28, 1989. Selsky reviewed the record and on January 17, 1990 affirmed Demskie's disposition. On January 18, 1990 a copy of the decision was forwarded to plaintiff.

Defendant Scully had no personal involvement in plaintiff's appeal. A superintendent has the discretion to review Tier III hearings, and may reduce the penalty. Scully, however, notified Lott by a letter dated January 18, 1990 that First Deputy Superintendent Artuz ("Artuz") was his designee to review an appeal at Green Haven. Accordingly, Scully had no direct involvement in the appeal, he had no legal obligation to review Lott's letter of appeal, and Artuz is not a party to this action.

*Standards for Summary Judgment*

To grant summary judgment the court must determine that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court's responsibility is not to resolve disputed issues of fact, *Donahue v. Windsor Lock Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987), but to determine whether there are any factual issues to be tried, while resolving ambiguities and drawing inferences against the moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

Nonetheless, summary judgment should be granted where no reasonable trier of fact could find in favor of the non-moving party. *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Sys., Inc.*, 879 F.2d 1005, 1011 (2d Cir.1989), and to enable the court to dispose of meritless claims before becoming entrenched in a costly trial. *Donahue*, 834 F.2d at 58 (citing *Knight v. U.S. Fire Ins, Co.*, 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

*Lott fails to state a claim under § 1983*

▮ The gravamen of Lott's complaint is that his hearing lacked procedural constitutional safeguards to ensure him of a fair and unbiased hearing. Specifically, Lott has abandoned his claims that during the hearing he was denied the right to call witnesses, the right to introduce documentary evidence, and the right to have the hearing officer interview witnesses. Instead, Lott now argues that defendant Demskie, the hearing officer, was biased in his determination and failed to assess the documentary evidence submitted by plaintiff.

The United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), addressed the issue of minimum procedural due process rights which must be afforded to inmates facing a disciplinary proceeding, a violation of which could result in the loss of a constitutionally protected liberty in interest. The requirements prescribed in *Wolff* include advance written notice of a claimed violation and a written statement from the fact-finder describing the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 563, 94 S.Ct. at 2978. Here, Lott received written notice of his violation and a written statement of Demskie's decision.

*Wolff* also requires that an inmate be given a meaningful opportunity to marshall and present evidence in his defense. *Id.* at

566, 94 S.Ct. at 2979–80. At the same time, the *Wolff* Court recognized that the operation of a prison is an "extraordinarily difficult undertaking" and the prison officials should be free to exercise their discretion "without being subject to unduly crippling constitutional impediments." *Id.* at 566–67, 94 S.Ct. at 2980.

The due process requirements established in *Wolff* and reiterated in *Freeman v. Rideout*, 808 F.2d 949 (2d Cir.1986), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1987), were fully complied with throughout Lott's disciplinary proceedings. Defendant Demskie conducted the hearing which was recorded electronically on November 6, 13, and 14, 1989. Demskie explained the charges to Lott who entered a not guilty plea. Lott had the right to call witnesses, introduce documentary evidence, and review written reports accusing him of the charges. Moreover, on November 13, 1989, Demskie conducted an *in camera* hearing to question LaBoy concerning the reliability and credibility of her confidential sources—the basis of her investigation.

At the hearing Lott testified that he submitted a document entitled "INVESTIGATION" as an "affidavit" signed by inmates. The transcript reveals that Lott never asked Demskie to interview any of the individuals who signed that document. In any event, Demskie admitted this document into evidence, and no evidence suggests that he failed to consider it among all the evidence in rendering his decision. Demskie was under no constitutional requirement to investigate further Lott's evidence.

Moreover, Lott was permitted to introduce documentary evidence other than his "affidavit" entitled "INVESTIGATION." During the hearing Lott tendered two additional documents. Demskie made these documents part of the record. Indeed, Demskie specifically asked Lott if he had any additional information to be considered, and Lott stated he did not. Accordingly, the hearing transcript makes clear that Demskie possessed all the documentary evidence Lott wished him to consider.

■ Lott's allegation that he was denied a fair hearing because defendant Demskie was biased is without merit. Demskie allowed plaintiff ample opportunity to introduce oral and documentary evidence. Indeed, the hearing was conducted piecemeal to ensure the availability of all the testimony Lott desired. Lott has set forth absolutely no facts in his complaint alleging he requested additional witnesses or wanted to have the inmates on his "INVESTIGATION" affidavit interviewed. Accordingly, Demskie accorded Lott the procedural due process safeguards as set forth in *Wolff,* 418 U.S. at 563, 94 S.Ct. at 1886–87.

Lott contends, however, that Demskie predetermined Lott's guilt and certainly, "it would be improper for prison officials to decide the disposition of a case before it was heard." *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). Lott's only evidence in support of this alleged predetermination of the issue is set forth at pages 21–23 of the hearing transcript, specifically where Demskie states:

INMATE LOTT: And one other thing. I'm kind of—now, at first I was really [inaudible] the way the sergeant came in the block and got us. You know, the thing happened, I think, on the 29th, and she come get us on the 1st, or 2nd, whatever it was—

H.O. DEMSKIE: Yes.

INMATE LOTT:—at night with handcuffs and, you know—

H.O. DEMSKIE: That was done after a consultation with me, because I wouldn't allow the sergeant to move any of you to A–2 until I was reasonably assured that there was definitely some fairly reliable source that was saying that it happened. I mean I wasn't—I knew we had to be hearing stuff, but I didn't want anything, any action taken unless I was reasonably assured that the action was warranted. And I [inaudible] until after she completed her investigation—

INMATE LOTT: Actually, I could be wrong, but it seems like what you're saying to me that, I think that it happened and no matter what—

H.O. DEMSKIE: No—

INMATE LOTT:—not what you're saying, no matter—

H.O. DEMSKIE: I'm saying—no, I'm not saying that at all. I'm saying that, you know, it's very similar, I guess, the concept of the outside courts—a police officer makes an arrest, that the D.A. doesn't take the case unless he's reassured that there's some kind of a problem. And then he presents it to the grand jury. And that's exactly where I was. I wanted to make sure—I didn't want five guys moved to A–2 and then find out, of, well, we can't just—we can only justify one guy doing it. I didn't want that. I wanted somebody to say to me, OK, without getting into specifics, do you have evidence that says that they did. And the answer was yes, I said, OK, then go ahead and move them.

So that's why, and not until then, did I allow them to move you. And now the hearing specifically determines your guilt, so that's where we're at with that. OK?

All right, we're going to wait for C.O. Bunts, he should be back tomorrow. I'll get you back in and we'll finish up at that time.

It's 2:52.

Lott's claim that defendant Demskie prejudged this case is unsubstantiated. The hearing record is clear that Demskie conducted the hearing in an impartial manner and never rendered a disposition until he considered all the evidence. Demskie did not commence the hearing until he was assured that LaBoy had completed her investigation. Demskie did not proceed until plaintiff's assistant completed an investigation. Furthermore, Demskie independently assessed the credibility and reliability of the confidential sources during the *in camera* hearing. Demskie never conducted the investigation. Rather, as hearing officer, he completely and fully reviewed the evidence before rendering a decision.

A careful review specifically of pages 21–23 shows that Lott raised with Demskie the possibility of Demskie having prejudged the case. Demskie emphatically de-

nied this and explains on the hearing record that he didn't want Lott moved until he was sure that the officers had completed their investigation and believed they had information establishing Lott's participation in the assault—*not* that Demskie was assured that Lott had participated in the assault. Demskie explained this to Lott precisely during the discourse Lott claims as the substantiation of Demskie's bias. Lott sets forth no facts whatsoever to show that Demskie prejudged Lott's guilt except for this colloquy that states the exact opposite on the record.

Drawing all inferences against the state, absent any factual allegations to sustain Lott's claim, no reasonable trier of fact could grant Lott relief.

Lott's constitutional procedural due process rights were fully protected at his hearing. Accordingly, summary judgment is granted in favor of the DOCS defendants. This case is dismissed.

It is so ordered.