**Lance CARTER, Plaintiff,**

v.

**Donald CARRIERO, et al., Defendants.**

**No. 92–CV–522S.**

United States District Court,
W.D. New York.

Aug. 8, 1995.

Katie Baumgarten, Nixon, Hargrave, Devans & Doyle, Buffalo, NY, for plaintiff.

William Lonergan, Patrick O. McCormack, Office of the Atty. Gen., Buffalo, NY, for defendants.

## DECISION AND ORDER

SKRETNY, District Judge.

### *INTRODUCTION*

Before this Court is the motion of defendants Roy Henneberg and Walter R. Kelly for summary judgment pursuant to Fed. R.Civ.P. 56. Plaintiff brings this action under 42 U.S.C. § 1983, alleging in his first claim for relief that defendants Donald Carriero, Thomas Breckon, Richard Maronski, Anthony Marrano, and Superintendent Walter Kelly violated plaintiff's rights under the Eighth and Fourteenth Amendments by an unwarranted physical assault. Plaintiff's second claim for relief alleges that Captain Roy Henneberg and Superintendent Kelly violated plaintiff's right to due process under the Fourteenth Amendment at a subsequent disciplinary hearing. Defendant Henneberg moves for summary judgment on the second claim for relief, and defendant Kelly moves for summary judgment on both claims for relief. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

In support of their motion for summary judgment, defendants have submitted a memorandum of law ("D. Memo"); a supplemental memorandum of law ("D.S.Memo"); a statement of undisputed facts pursuant to Rule 25 of the Local Rules of Civil Procedure for the Western District of New York ("D. Facts"); an affirmation by Walter R. Kelly ("Kelly Aff."); an affirmation by Roy Henneberg ("Henneberg Aff."), with exhibits; and a supplemental affidavit of Walter Kelly ("Kelly S.Aff.").[1]

In opposition to defendants' motion, plaintiff has submitted a memorandum of law ("P. Memo"); a supplemental memorandum of law ("P. S.Memo"); a statement of material facts in genuine dispute pursuant to Local Rule 25 ("P. Facts"); an affidavit of Lance Carter ("Carter Aff."); and an affirmation by Mary C. Baumgarten ("Baumgarten Aff."), with exhibits, including the Tier III Hearing transcript at Exhibit G ("Transcript"). Oral argument was heard on July 26, 1995.

For the reasons set forth below, this Court will grant defendant Henneberg's motion for summary judgment, and grant in part and deny in part defendant Kelly's motion for summary judgment.

### *FACTS*

Plaintiff, an inmate at Wende Correctional Facility, was incarcerated at Attica Correctional Facility ("Attica") in 1991. On November 4, 1991, a misbehavior report was issued against plaintiff. The report charged plaintiff with violent conduct, assault on staff, refusing a direct order, threats, and a movement regulation violation. (Baumgarten Aff. ¶ 9, exh. B; Henneberg Aff. ¶ 4, exhs.)

According to the misbehavior and other incident reports, plaintiff engaged in disruptive behavior while standing in formation in the Attica recreation yard on November 4, 1991. Corrections Officer Donald Carriero ordered plaintiff to step out of formation and assume the pat-frisk position. During the pat-frisk, he ordered plaintiff to remain still several times. After completing the frisk, Officer Carriero ordered plaintiff onto the gallery and to lock-in to his cell. Plaintiff became verbally abusive and refused to lock his cell door. Officers Carriero and Richard Maronski went to plaintiff's cell to investigate the problem. As they approached plaintiff, plaintiff punched Officer Carriero in the chest and grabbed his baton from his holster. A struggle ensued for control of the baton, during which plaintiff hit Carriero in the chest with the butt of the baton. When Officer Maronski tried to help Officer Carriero restrain plaintiff, plaintiff bit Officer Mar-

---

1. At oral argument, counsel for defendants requested permission to supplement the record on the issue of whether plaintiff had a liberty interest protected by the Due Process Clause. Counsel for plaintiff did not oppose this request nor seek permission to further supplement the record. Counsel for defendants timely filed the supplemental affidavit of Walter Kelly on July 31, 1995. Counsel for plaintiff subsequently sent this Court a letter dated August 2, 1995, objecting to defendants' submission unless provided an opportunity to respond.

Since no objection was made at oral argument to defendants' supplemental submission, and since the information in the affidavit to which plaintiff objects, specifically paragraphs 7 and 8, does not affect the resolution of this motion, plaintiff's letter request to respond will be denied.

onski's hand. All three fell to the floor and broke the baton in two pieces.

Sergeant Thomas Breckon and Officer Anthony Marrano responded to the incident and found Officers Carriero and Maronski struggling with plaintiff on the cell floor. Breckon and Maronski handcuffed plaintiff and escorted him off the gallery to the facility hospital where he was treated for lacerations to his lip. Officers Maronski and Carriero were transported to Wyoming County Community Hospital. Officer Carriero suffered a bite to his leg and bruises to his left hand, and Officer Maronski suffered bruises to his cheek and knee and a bite to his right hand. (Henneberg Aff. ¶ 4, exhs.)

Plaintiff offers a different version of these events. During the initial frisk, according to plaintiff, Officer Carriero groped and pulled his genitals, and punched his ribs. (Carter Aff. ¶ 4.) After Carriero ordered plaintiff to return to his cell and plaintiff started walking, Carriero began to push and shove him. (Carter Aff. ¶ 5.) Once plaintiff reached his cell, he returned to the gallery and asked the Officer in Charge if he had any law library slips. (Carter Aff. ¶ 6.) The officer did not, and, as plaintiff returned to his cell, another officer made racial remarks toward him. Upon finally reaching his cell, plaintiff forgot to lock the door. (Carter Aff. ¶ 7.) Six corrections officers entered plaintiff's cell shortly thereafter and beat him. (Carter Aff. ¶ 8.) Each officer struck, punched, and kicked plaintiff numerous times in the face, head, chest, legs, and genitals. (Carter Aff. ¶ 9.) Plaintiff claims to have discovered after the beating that four of the corrections officers were defendants Carriero, Maronski, Breckon, and Marrano.

On November 10, 1991, a Tier III Superintendent's Hearing was commenced before Hearing Officer Captain Roy Henneberg with respect to the incident. (Henneberg Aff. ¶ 3.) At the start of the hearing, four inmate witnesses were selected for interview. (Transcript, p. 2.) Henneberg denied plaintiff's request to be present at the examination of witnesses for the stated reason that plaintiff was incarcerated in the Special Housing Unit. (Transcript, p. 9.) Plaintiff agreed to submit a question to the witnesses and have their testimony recorded and played back for his review and response. (Transcript, p. 9.) After review of the witnesses' recorded testimony, four additional witnesses were requested and interviewed. (Transcript, pp. 22–26.) The testimony of those witnesses was also recorded and played for plaintiff's review. (Transcript, p. 26.)

During the preliminary questioning by Henneberg and after reviewing all witness testimony, plaintiff alleged that the charges against him were not written on one ticket. (Transcript, pp. 11, 12, 27, 28.) He asserted that the Use of Force Report prepared in connection with the incident stated that a baton was broken during the incident while the Misbehavior Report omitted the broken baton. (Transcript, pp. 11, 12.) Henneberg declined to consider the broken baton as evidence because the misbehavior report did not charge plaintiff with breaking it. (Transcript, p. 12.) At the close of the hearing, plaintiff renewed his objections to the ticket. (Transcript, p. 27.) Plaintiff further objected that Henneberg did not ask the question submitted by plaintiff before witness interviews and that defendant did not conduct the hearing impartially. (Transcript, pp. 28, 29.)

On November 18, 1991, Henneberg sustained the misbehavior report and imposed a penalty of 360 days confinement to the Special Housing Unit, with a suspension of 90 days and a deferment of 180 days. (Transcript, p. 29.) Plaintiff then submitted an appeal to Donald Selsky, Director Special Housing/Inmate Discipline Program, who affirmed the November 1991 disciplinary hearing. (Baumgarten Aff. ¶ 20, exh. I.)

On August 5, 1992, plaintiff filed a *pro se* complaint. Nixon, Hargrave, Devans & Doyle was appointed counsel for the plaintiff, and by motion dated May 21, 1993, plaintiff sought to amend the complaint to add new causes of action and defendants. The Hon. Leslie G. Foschio, United States Magistrate Judge for the Western District of New York, granted the motion in part on September 22, 1993, adding Captain Henneberg and Super-

intendent Kelly as defendants. (Baumgarten Aff. ¶ 3.)

Defendants Kelly and Henneberg now move for summary judgment. The first claim for relief in plaintiff's amended complaint alleges that defendant Kelly, "with personal involvement, knowledge and acquiescence" in the alleged assault, denied plaintiff his rights under the Eighth and Fourteenth Amendments. (Amended Complaint ¶ 24, 25.) Plaintiff's second claim for relief alleges that at the Tier III hearing defendant Henneberg "violated plaintiff's right to disciplinary due process under the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983," by "denying plaintiff's requests for the production of witnesses ... and physical evidence...." Plaintiff further alleges that defendant Kelly had "personal involvement, knowledge, and acquiescence" in the hearing. (Amended Complaint ¶ 33.)

Plaintiff seeks $1,000,000 damages against each defendant and an order directing that plaintiff's disciplinary record be expunged of any record of the November 1991 incident or subsequent incidents relating thereto.

## DISCUSSION

### A. Standard for Summary Judgment

Fed.R.Civ.P. 56(c) provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510.

Under Rule 56, a party moving for summary judgment can meet its burden either by producing evidence showing the absence of a genuine issue of material fact or by pointing out to the court that there is an absence of evidence supporting one or more essential elements of the non-moving party's

case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Furthermore, Rule 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The function of the court is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. A summary judgment motion will not be defeated, however, merely on the basis of a "metaphysical doubt" about the facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), "or on the basis of conjecture or surmise," *Bryant*, 923 F.2d at 982. The nonmoving party must come forward with significant probative evidence in support of its complaint. *See Capital Imaging v. Mohawk Valley Medical Associates*, 996 F.2d 537, 542 (2d Cir.1993).

Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," *id.* at 541, and "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553.

### B. Due Process

This Court will first address whether defendants are entitled to summary judgment on the second claim in plaintiff's complaint.

Plaintiff's second claim for relief alleges that both defendants Henneberg and Kelly violated plaintiff's right to due process under the Fourteenth Amendment at the November 1991 disciplinary hearing.

### 1. *Defendant Henneberg*

Plaintiff claims that defendant Henneberg denied him "the opportunity to meaningfully marshal and present evidence in his defense, thereby depriving the plaintiff of his right to procedural due process." (P. Memo, p. 12.) Specifically, plaintiff asserts that Henneberg refused to question witnesses about circumstantial evidence, declined to produce physical evidence, and failed to remain impartial during the proceeding. (P. Memo, pp. 8, 12.) Henneberg responds that no constitutional violation occurred as a result of his conduct as a disciplinary hearing officer. (D. Memo at 1.) This court agrees.

■ An analysis of whether the protective procedures afforded plaintiff at the hearing were sufficient is "not required unless 'there exists a liberty or property interest which has been interfered with by the State.'" *Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir.) (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989)), *cert. denied*, — U.S. —, 114 S.Ct. 115, 126 L.Ed.2d 80 (1992). The Supreme Court recently reexamined the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, — U.S. —, — — —, 115 S.Ct. 2293, 2295, 132 L.Ed.2d 418 (1995) (internal citations omitted).

The inmate in *Sandin*, Conner, was charged under Hawaii prison regulations with "high misconduct" punishable by incarceration in the Special Holding Unit ("SHU"). After an adjustment committee hearing, Conner was sentenced to 30 days SHU confinement. The Supreme Court addressed "the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests." *Id.* at —, 115 S.Ct. at 2301. The Court held that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* The Court noted that in Hawaii, "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody." *Id.*

> The Special Holding Unit (SHU) houses inmates placed in disciplinary segregation, administrative segregation, and protective custody. Single-person cells comprise the SHU and conditions are substantially similar for each of the three classifications of inmates housed there. With the exception of one extra phone call and one extra visiting privilege, inmates segregated for administrative reasons receive the same privilege revocations as those segregated for disciplinary reasons.

*Id.* at — n. 2, 115 S.Ct. at 2296 n. 2 (internal citations omitted).

Under New York prison regulations, inmates can be placed in SHU for disciplinary confinement, detention, administrative segregation, protective custody, keeplock confinement, and "for any other reason, with the approval of the deputy commissioner for facility operations." 7 N.Y.C.R.R. §§ 301.1–.7.

■ Plaintiff argues that SHU disciplinary segregation is an atypical, significant deprivation because it limits privileges such as law library access, educational opportunities, visitation, telephone use, personal property, employment eligibility, work release, and furloughs. (P. S.Memo, p. 6.) These restrictions, however, apply to all inmates housed in SHU, whether the confinement is punitive or not. An inmate in SHU for disciplinary confinement may have limited access to a cell

study program, *id.* § 304.11,[2] but all other SHU restrictions do not distinguish between disciplinary and administrative confinement, *id.* §§ 302–305. Confinement in SHU also does not automatically disqualify an inmate from good behavior allowances. *Id.* § 260.4.

The other distinction plaintiff draws is the length of his confinement. Plaintiff's penalty was 360 days of SHU confinement, with a suspension of 90 days and a deferment of 180 days, resulting in a penalty of 270 days. While this penalty certainly was longer than the penalty in *Sandin,* the confinement itself did not exceed similar administrative confinement "in either duration or degree of restriction."

Applying *Sandin,* SHU confinement in New York does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Focusing on the nature of the deprivation, neither New York prison regulations nor the Due Process Clause itself afforded plaintiff a protected liberty interest that would entitle him to the procedural protections he claims defendants violated.

■ However, even if plaintiff did have a protected liberty interest, he certainly received the amount of process due.

The United States Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), addressed the issue of minimum procedural due process rights which must be afforded to inmates facing a disciplinary proceeding.... The requirements prescribed in *Wolff* include advance written notice of a claimed violation and a written statement from the factfinder describing the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 563, 94 S.Ct. at 2978....

*Wolff* also requires that an inmate be given a meaningful opportunity to marshall and present evidence in his defense. *Id.* at 566, 94 S.Ct. at 2979–80. At the same time, the *Wolff* Court recognized that the operation of a prison is an "extraordinarily difficult undertaking" and the prison offi-

cials should be free to exercise their discretion "without being subject to unduly crippling constitutional impediments." *Id.* at 566–67, 94 S.Ct. at 2980.

*Lott v. Selsky,* 747 F.Supp. 226, 229 (S.D.N.Y.1990); *see also Young,* 970 F.2d at 1156. The due process requirements established in *Wolff* were fully satisfied in plaintiff's disciplinary proceeding. There is no dispute that plaintiff received a copy of the formal charge against him. (Transcript, p. 1.) Plaintiff requested that four witnesses be called, all of whom Henneberg questioned as to their knowledge of the incident at issue. (Transcript, p. 4.) Henneberg told plaintiff that he could request further witnesses at any time during the hearing. (Transcript, p. 4.) At plaintiff's request, Henneberg did call four additional inmate witnesses. (Transcript, p. 22.) Henneberg allowed plaintiff to review and comment on all recorded witness testimony.

Plaintiff specifically argues that Henneberg denied plaintiff due process by not asking witnesses whether they saw or heard officers running down the company at the time of the incident. (P. Memo, p. 5.) Henneberg explained to plaintiff that since each witness stated that he had no personal knowledge of the incident, there was no basis on which to ask specific questions about the incident. (Transcript, p. 21.) After conceding that there was no question that officers ran down the company, Henneberg did call additional witnesses at plaintiff's request. These accommodations hardly amount to a due process violation.

With regard to production of the baton, Henneberg explained that the misbehavior report did not charge plaintiff with breaking the baton and that production of the baton was therefore unnecessary. *See Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980. *Wolff* and its progeny do not state or imply that inmates have the right to compel the production of all physical evidence. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits...." *Id.,* 418 U.S. at 566, 94 S.Ct. at 2980.

---

**2.** According to Walter Kelly, plaintiff does have access to facility educational programs, includ-

ing cell study. (Kelly S. Aff. ¶ 5.)

Finally, plaintiff has presented no evidence, nor does the record in any way demonstrate, that defendant Henneberg was biased. "[U]pon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue—not merely one that is colorable—of material fact is present." *Gibson v. American Broadcasting Companies,* 892 F.2d 1128, 1132 (2d Cir. 1989). The non-moving party must offer " 'concrete evidence from which a reasonable juror could return a verdict in his favor.' " *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514). Plaintiff's conclusory allegations regarding bias on Henneberg's part do not meet the standard necessary to defeat summary judgment. *See Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (conclusory allegation of hearing officer bias will not sustain a claim of violation of due process); *see also Lott,* 747 F.Supp. at 230 (allegation that hearing officer was biased without merit). Henneberg informed plaintiff of the charges against him, called and questioned eight witnesses, recorded and reviewed the testimony with plaintiff, allowed plaintiff to present oral evidence in his defense, and informed plaintiff of his rights on appeal. Plaintiff's claim that Henneberg was biased is entirely unsubstantiated.

### 2. *Defendant Kelly*

■ Defendant Kelly asserts that he is entitled to summary judgment because he had no personal involvement in any due process violation alleged by plaintiff.[3] Plaintiff argues that defendant Kelly is liable because he knew or should have known about the due process violation at the hearing and failed to remedy the wrong. (P. Memo, p. 13.) Since no constitutional violation occurred as a re-

sult of the hearing, there is no need to address whether Kelly was personally involved.

### C. *Assault*

Plaintiff argues in his first claim for relief that defendant Kelly is liable for the alleged assault itself "because he failed to remedy the wrong after learning of it, was grossly negligent in managing his subordinates and permitted an environment to exist in which the six Corrections Officers could beat the plaintiff." (P. Memo at 15.) Kelly moves for summary judgment on this claim, asserting no personal involvement in the November 4th incident or any subsequent action.

Plaintiff argues that summary judgment is inappropriate at this time because discovery is not complete regarding Kelly's involvement in the alleged assault. Plaintiff has requested production of the other defendants' personnel files. Without these documents, plaintiff argues, he is "unable to fully determine what defendant Kelly knew of the history of use of force by each of the defendants." (P. Memo, p. 17.) The parties currently await a decision from Magistrate Judge Foschio as to whether these files contain relevant information "in determining what notice defendant Kelly had concerning the defendants' previous use of force violations...." (Baumgarten Aff. ¶ 29.) Under Fed.R.Civ.P. 56(f):

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Though at this time plaintiff has presented no evidence that defendant Kelly was in any

---

**3.** A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in the following ways:

> The defendant may have directly participated in the infraction. A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. A supervisory official may be liable because he or she created a policy or custom under which

unconstitutional practices occurred, or allowed such a policy or custom to continue. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (internal citations omitted).

way involved in the alleged assault, this Court will deny his motion for summary judgment since Magistrate Judge Foschio has not yet resolved the outstanding discovery issue.

## CONCLUSION

For the reasons set forth above, this Court will grant defendant Henneberg's motion for summary judgment and will grant in part and deny in part defendant Kelly's motion for summary judgment.

## ORDER

IT IS HEREBY ORDERED, that defendant Henneberg's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is GRANTED.

FURTHER, that defendant Kelly's motion for summary judgment pursuant to Fed. R.Civ.P. 56 is GRANTED with respect to the second claim for relief in the complaint, and DENIED with respect to the first claim for relief in the complaint.

SO ORDERED.