**Reggie McALLISTER, Plaintiff,**

v.

**Kenneth ZYDEL and Kevin Kruschek, Defendants.**

**No. 94–CV–6175L.**

United States District Court,
W.D. New York.

May 29, 1996.

Reggie McAllister, pro se.

· Elizabeth J. McDonald, Office of New York State Attorney General, Rochester, NY, for defendants.

### DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Reggie McAllister, appearing *pro se,* commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate currently incarcerated at Green Haven Correctional Facility, seeks *compensatory and punitive* damages in connection with his fifteen-day confinement in keeplock status while he was an inmate of Attica Correctional Facility in 1992. Plaintiff has moved for summary judgment, and defendants have cross-moved for summary judgment.

### FACTUAL BACKGROUND

Plaintiff alleges that on April 28, 1992, defendant Kevin Kruschke,[1] a Correction Officer, approached plaintiff in an Attica recre-

ational yard and ordered him to return to his cell. McAllister asked what was wrong and Kruschke responded that McAllister had taken an unauthorized shower.

McAllister returned to his housing unit, where defendant Kenneth Zydel, another Correction Officer, escorted him to McAllister's cell. Zydel then allegedly ordered the officer responsible for that area to put a keeplock tag on plaintiff's cell.

No misbehavior report was issued, nor was a disciplinary hearing held concerning the alleged unauthorized shower. Plaintiff was released from keeplock on May 12, 1992.

The day he was released, plaintiff filed an inmate grievance alleging that his keeplock confinement violated his due process rights because of defendants' failure to serve him with a misbehavior report or to hold a hearing in accordance with Department of Correctional Services procedures. After an investigation, the investigating sergeant concluded that McAllister had been erroneously held in keeplock and that he should not have lost any pay during his keeplock confinement.

### DISCUSSION

At the outset, I note that plaintiff, in his papers in opposition to defendants' cross-motion, contends that there are genuine issues of material fact concerning the underlying events that preclude summary judgment in this case. That plaintiff would make such an assertion seems a bit odd, since plaintiff himself was the first party to move for summary judgment. At any rate, I do not believe that these alleged factual issues are of any significance in this case because, even assuming the truth of all of plaintiff's factual allegations, it is clear that defendants are entitled to summary judgment in light of the Supreme Court's decision in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

In *Sandin,* the Court held that neither Hawaii state regulations nor the Due Process Clause conferred upon a prisoner a liberty interest in avoiding thirty days' disciplinary

---

1. Kruschke's name is misspelled in the complaint.

confinement in a Special Housing Unit ("SHU"). The Court said that state regulations can create a liberty interest only where a restraint imposes "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Id.* at ——, 115 S.Ct. at 2300.

Prior to *Sandin,* the question of whether a state regulation created a liberty interest depended on whether the language of the regulation was "of an unmistakably mandatory character" as opposed to a mere "procedural guideline." *Id.* at ——, 115 S.Ct. at 2298 (citing *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). In other words, a regulation could give rise to a liberty interest if it used words such as "shall" or "must," indicating that particular procedures *had* to be followed. *See Rodriguez v. Phillips,* 66 F.3d 470, 479 (2d Cir. 1995).

■ The *Sandin* Court shifted the focus away from the mandatory nature of state statutes or regulations to the "nature of the deprivation." Under *Sandin,* the important question now is whether the deprivation constitutes a significant departure from ordinary prison conditions. *Sandin,* at ——, 115 S.Ct. at 2295; *Arce v. Walker,* 907 F.Supp. 658, 661 (W.D.N.Y.1995); *Malsh v. Austin,* 901 F.Supp. 757, 761 (S.D.N.Y.1995).

The Court in *Sandin* acknowledged that there could be some limited circumstances in which the Due Process Clause creates a liberty interest in avoiding certain prison conditions that might result in exceeding the original sentence or which are "qualitatively different" from ordinary prison conditions and have "stigmatizing consequences." *Sandin,* at ——, 115 S.Ct. at 2297. Citing cases in which a prisoner was involuntarily transferred to a mental hospital for treatment of a mental disease (*see Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)) or involuntarily given psychotropic drugs (*see Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990)), the Court said that certain liberty interests can be impinged regardless of state regulations. However, the Court clearly did not consider thirty days of punitive SHU confinement to rise to that level. On the facts

before it, the Court concluded that neither the prison regulation in question nor the Due Process Clause gave the plaintiff a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *Sandin,* at ——, 115 S.Ct. at 2301.

■ Based on the principles enunciated in *Sandin,* I find that plaintiff's confinement in keeplock status did not deprive him of a liberty interest protected by the Due Process Clause. McAllister's confinement did not "exceed [his] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," *id.* at ——, 115 S.Ct. at 2299, nor did it "impose 'atypical and significant hardship on [McAllister] in relation to the ordinary incidents of prison life.'" *Carter v. Carriero,* 905 F.Supp. 99, 104 (W.D.N.Y.1995).

Although the length of an inmate's keeplock or SHU confinement is not dispositive of whether a liberty interest is implicated, *Brooks v. DiFasi,* No. 93–CV–0197E(H), 1995 WL 780976 *5 (W.D.N.Y. Dec. 29, 1995), it should be noted that McAllister's confinement was only half as long as the plaintiff's in *Sandin.* In addition, numerous cases from this circuit have dismissed due process claims in cases involving penalties far lengthier than McAllister's confinement. *See, e.g., Rivera v. Coughlin,* No. 92 Civ. 3404, 1996 WL 22342 (S.D.N.Y. Jan. 22, 1996) (89 days in keeplock); *Brooks,* 1995 WL 780976 *5 (180 days in SHU); *Tulloch v. Coughlin,* No. 91–CV–0211E(M), 1995 WL 780970 *2 (180 days in SHU); *Rosario v. Selsky,* No. 94 Civ. 6872, 1995 WL 764178 (S.D.N.Y. Dec. 26, 1995) (85 days in SHU); *Arce,* 907 F.Supp. at 662 (19 days in SHU); *McMiller v. Wolf,* No. 94–CV–623E, 1995 WL 529620 *1–3 (W.D.N.Y. Aug. 28, 1995) (183 days in SHU); *Carter,* 905 F.Supp. at 104 (270 days in SHU). I agree with the reasoning of these cases and find that plaintiff's confinement was not an "atypical and significant hardship" so as to give rise to the due process protections to which plaintiff claims he was entitled.

In addition, "[t]he Supreme Court in *Sandin* suggested that the degree of hardship is partly a function of the length of time spent in segregated confinement as a percentage of the inmate's total sentence." *Rosario,* 1995 WL 764178 *5 (citing *Sandin,* at ——, 115 S.Ct. at 2302). In *Rosario,* the court noted that the plaintiff's prisoner number, 85–B–1195, indicated that he had been incarcerated since 1985, meaning that he had been in prison for over ten years at the time the court issued its decision. The three months' confinement in SHU at issue in *Rosario,* the court observed, thus represented a very small portion of the plaintiff's total sentence.

That reasoning applies with equal, if not greater, force in the case at bar. McAllister's New York inmate number, 89–A–7685, indicates that his incarceration commenced in 1989. Since plaintiff has been incarcerated for some seven years, then, the fifteen days that he spent in keeplock is an even smaller fraction of his overall sentence than was the penalty in *Rosario.*

## CONCLUSION

Plaintiff's motion for summary judgment (Item 27) is denied. Defendants' cross-motion for summary judgment (Item 33) is granted, and the complaint is dismissed.

IT IS SO ORDERED.