**Andre Aleek JONES, Plaintiff,**

v.

**Walter KELLY and T. Dixon, Defendant.**

**No. 90–CV–747L.**

United States District Court,
W.D. New York.

Aug. 26, 1996.

Donald M. Thompson, Rochester, NY, for plaintiff.

James L. Gelormini, Office of the New York State Attorney General, Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

Plaintiff Andre Aleek Jones, an inmate in the custody of the New York State Department of Correctional Services, brings this action pursuant to 42 U.S.C. § 1983. The complaint alleges that defendants Walter Kelly (Superintendent of Attica Correctional Facility) and T. Dixon (a hearing officer), violated Jones' procedural due process rights during a Tier III disciplinary hearing in June 1990. Specifically, Jones alleges that the defendants refused his requests to call witnesses, denied him effective "employee assistance," and failed to assess the reliability of a confidential informant. Jones was found guilty of the violations that were the subject of the hearing. As punishment, he was sentenced to 730 days in the Special Housing Unit ("SHU") at Attica, without telephone privileges.

Jones subsequently brought this action, as well as an Article 78 proceeding in New York state court, challenging his SHU confinement. The Article 78 proceeding settled, and in accordance with the settlement terms Jones was released from SHU in December 1990 and all charges expunged from his institutional record. Thus, Jones was released from SHU confinement after serving 191 days of his 730 day sentence.[1]

In this action, defendants now move for summary judgment. Relying on *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), they assert that Jones had no liberty interest in remaining in the general prison population and, thus, his 191 day SHU confinement did not constitute any constitutional deprivation. Defendants assert that because SHU confinement (for either administrative or punitive reasons) is a normal incident of prison life, it does not constitute an "atypical and significant hardship" in relation to ordinary prison life. The duration of the confinement, assert defendants, is irrelevant.

Jones opposes and cross-moves, asserting that his case is distinguishable from *Sandin* because the duration of confinement originally imposed (730 days) is so much greater than the 30 days at issue in *Sandin,* and because his confinement was different from administrative confinement because he was denied telephone privileges.

---

1. There is some inconsistency in the record as to whether Jones was confined to SHU for 175 or 191 days. I will assume for purposes of this motion that Jones served 191 days.

## DISCUSSION

In *Sandin v. Conner,* the Supreme Court held that neither Hawaii state regulations nor the Due Process Clause created a liberty interest for a prisoner in avoiding thirty days' disciplinary confinement in SHU. The Court said that state regulations can create a liberty interest only where a restraint imposes "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Id.* at ——, 115 S.Ct. at 2300.

Prior to *Sandin,* the question of whether a state regulation created a liberty interest depended on whether the language of the regulation was "of an unmistakably mandatory character" as opposed to a mere "procedural guideline." *Id.* at ——, 115 S.Ct. at 2298 (citing *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). In other words, a regulation could give rise to a liberty interest if it used words such as "shall" or "must," indicating that particular procedures *had* to be followed. *See Rodriguez v. Phillips,* 66 F.3d 470, 479 (2d Cir. 1995).

■ The *Sandin* decision shifted the focus away from the mandatory nature of state statutes or regulations to the "nature of the deprivation." Under *Sandin,* the important question now is whether the deprivation constitutes a significant departure from ordinary prison conditions. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2295; *Arce v. Walker,* 907 F.Supp. 658, 661 (W.D.N.Y.1995); *Malsh v. Austin,* 901 F.Supp. 757, 761 (S.D.N.Y.1995).

The Court in *Sandin* did acknowledge that there could be some limited circumstances in which the Due Process Clause creates a liberty interest in avoiding certain prison conditions that might result in exceeding the original sentence or which are "qualitatively different" from ordinary prison conditions and have "stigmatizing consequences." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2297. Citing cases in which a prisoner was involuntarily transferred to a mental hospital for treatment of a mental disease (*see Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)) or involuntarily given psychotropic drugs (*see Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990)), the Court said that cer-

tain liberty interests can be impinged regardless of state regulations. However, the Court clearly did not consider thirty days of punitive SHU confinement to rise to that level. Thus, on the facts before it, the Court concluded that neither the prison regulations in question nor the Due Process Clause gave the plaintiff a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *Sandin, supra,* at ——, 115 S.Ct. at 2301.

■ Guided herein by *Sandin,* I find that Jones' SHU confinement did not deprive him of a liberty interest protected by the Due Process Clause or by New York prison regulations. Jones' confinement did not "exceed the sentence in such an unexpected manner as to give rise to protection by the Due Process clause of its own force." *Id.* at ——, 115 S.Ct. at 2299. Nor was Jones' confinement an "atypical and significant hardship" constituting a significant departure from ordinary prison conditions. *Id.* at ——, ——, 115 S.Ct. at 2295, 2300.

Jones attempts to distinguish *Sandin* on the ground that he was confined significantly longer (191 days) than the plaintiff in *Sandin* (30 days), and because he lost telephone privileges during his confinement. I am not persuaded by these arguments.

■ The length of SHU confinement is not necessarily dispositive of whether a liberty interest is implicated. Under New York's prison regulations inmates may be confined in SHU for extended periods for both punitive and non-punitive reasons. *See Brooks v. DiFasi,* No. 93–CV–197E, 1995 WL 780976, *5 (W.D.N.Y. Dec. 29, 1995). Indeed, inmates may be confined to SHU for disciplinary, administrative, protective, detention, or "any other reason" approved by the deputy commissioner. *Carter v. Carriero,* 905 F.Supp. 99, 103 (W.D.N.Y.1995) (citing 7 N.Y.C.R.R. § 301.1–.7). Thus, "SHU confinement in New York does not impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 104 (citing *Sandin.* *See also Polanco v. Allan,* No. 93–CV–1498, 1996 WL

377074 (N.D.N.Y. July 5, 1996)) ("instead of length of time, the central question when analyzing an SHU sentence is whether such 'discipline by prison officials falls within the expected parameters of the sentence imposed by the court of law.'") (citing *Brown v. McClellan*, 1996 WL 328209, *4 (W.D.N.Y. June 11, 1996)).

Post–*Sandin* cases from this Circuit have dismissed due process claims in cases involving penalties comparable to the one imposed in the case at bar. *See, e.g., Brooks, supra*, at *5 (365 days sentenced, 180 days served in SHU); *Tulloch v. Coughlin*, No. 91–CV–211E, 1995 WL 780970, *2 (W.D.N.Y. Dec. 22, 1995), *app. dismissed*, No. 96–2068, —— F.3d —— (2d Cir.1996) (180 days sentenced and served in SHU); *McMiller v. Wolf*, No. 94–CV–623E, 1995 WL 529620, *1–3 (W.D.N.Y. Aug. 28, 1995) (365 days sentenced, 183 days served in SHU); *Carter, supra*, at 104 (360 days sentenced, 270 days served in SHU); *Polanco v. Allan*, No. 93–CV–1498, 1996 WL 250237, *3 (N.D.N.Y. May 6, 1996) (365 days sentenced and served in SHU). Indeed, one court recently has stated "it now appears that any period of segregation of one year or less affords no protected liberty interest." *Polanco, supra*, at *3, *recons. denied*, 1996 WL 377074 *2 (N.D.N.Y. July 5, 1996) ("the general rule of a year or less seems appropriate, absent extraordinary circumstances"); *but see Lee v. Coughlin*, 902 F.Supp. 424 (S.D.N.Y.1995) (court was "hard pressed to believe" that 376 days confinement would not constitute "atypical and significant hardship"), *recons. granted*, 914 F.Supp. 1004 (S.D.N.Y.1996).

Nor do I find significant Jones' claim that his confinement was atypical because he was denied telephone privileges. As noted in *Tulloch, supra*, at *2, "[d]isciplinary segregation in New York mirrors, with insignificant exceptions, the conditions of administrative segregation and protective custody." *See also Rosario v. Selsky*, 94–CV–6872, 1995 WL 764178, *5 (S.D.N.Y.1995) ("the restric-

tions on privileges [in NYCRR Title 7, § 301.1–301.7] apply almost equally to all inmates in the SHU"). To the extent any difference in telephone privileges exists between punitive and nonpunitive SHU confinement, I find it to be a minor distinction. *See Sandin, supra*, at —— n. 4, 115 S.Ct. at 2297 n. 4 (no liberty interest implicated in prison context unless confinement is "qualitatively different" from typical punishment and has "stigmatizing consequences"); *see also Frazier v. Coughlin*, 81 F.3d 313 (2d Cir.1996) (where inmate's SHU confinement was not dramatically different from the 'basic conditions of [his] indeterminate sentence") (citing *Sandin* ).[2]

In addition, "[t]he Supreme Court in *Sandin* suggested that the degree of hardship is partly a function of the length of time spent in segregated confinement as a percentage of the inmate's total sentence." *Rosario, supra*, at *5 (citing *Sandin, supra*, at ——, 115 S.Ct. at 2302). In *Rosario*, the court noted that the plaintiff's prisoner number, 85–B–1195, indicated that he had been incarcerated since 1985, meaning that he had been in prison for over ten years at the time the court issued its decision. The three months' confinement in SHU at issue in *Rosario*, the court observed, thus represented a very small portion of the plaintiff's total sentence.

That reasoning applies with even greater force in the case at bar. Jones' inmate number, 75–A–2259, indicates that he has been incarcerated since 1975—at least twenty one years to date. The 191 days that he spent in SHU (or for that matter, the 730 days to which he was originally sentenced) as a result of the hearing before Dixon is thus a small fraction of his total sentence of incarceration.

Accordingly, for all the above reasons, I find that plaintiff's confinement was not an "atypical and significant hardship" so as to give rise to the due process protections to which plaintiff claims he was entitled.[3]

---

**2.** Nor does Jones' SHU confinement affect the duration of his court-imposed sentence. *See Frazier, supra*, at 317 (where prisoner cited no proof that might establish the "the State's action will inevitably affect the duration of his sentence"); *see also Brown, supra*, at *5 (inmate's SHU con-

finement did not affect the length of his total sentence).

**3.** Defendants assert alternatively that even if a liberty interest existed, Jones received appropriate due process, and also that the defendants are

## CONCLUSION

Defendant's motion for summary judgment (Docket 27) is granted, and the complaint is dismissed with prejudice. Jones' cross-motion for summary judgment (Docket 32) is denied.

IT IS SO ORDERED.

protected by qualified immunity. Because I grant defendants' motion on the first ground asserted I will not address these additional grounds.