46 F.3d 189
 Anthony GREEN, Plaintiff-Appellant,
v.
Patrick BAUVI, Jacqueline Terpanier, Clarence Colwell,
William Fenton, Thomas A. Bushek, Ted Nielsen, Ray
Sanford, Lieutenant, Amy Schnellbaecher,
Defendants-Appellees.
 No. 610, Docket 92-2630.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 10, 1994.
Decided Jan. 25, 1995.
 
 Charles D. Cole, Jr., Mineola, NY (Meyer, Suozzi, English & Klein, P.C., on the brief), for plaintiff-appellant.
 Barbara K. Hathaway, Asst. Atty. Gen., New York City (G. Oliver Koppell, Atty. Gen., State of NY, on the brief), for defendants-appellees.
 Before: FEINBERG, KEARSE, and PRATT, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff Anthony Green, a New York State prisoner, appeals from a final judgment of the United States District Court for the Southern District of New York, Robert P. Patterson, Jr., Judge, dismissing his complaint brought pursuant to 42 U.S.C. Sec. 1983 (1988) alleging various violations of his due process rights by correctional officers at the Green Haven Correctional Facility ("Green Haven"). On this appeal, Green challenges only the dismissal of his claims against (a) defendant Clarence Colwell and (b) Green Haven superintendent Charles Scully and deputy superintendents Charles Winch and Robert Seitz, who were among those previously named as defendants in this action, alleging that these defendants caused him to be segregated from the general prison population in March 1988 without conducting a hearing within a reasonable time. The district court (1) dismissed Green's claims against Scully, Winch, and Seitz pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that Green failed to allege their personal involvement in the deprivation of his rights, and (2) granted summary judgment in favor of Colwell principally on the grounds of qualified immunity and lack of evidence of his personal responsibility for the length of Green's confinement prior to the convening of a hearing. For the reasons discussed below, we affirm principally on the ground of qualified immunity.
 
 I. BACKGROUND
 
 2
 For purposes of this appeal, the chronology of events, all of which took place in March 1988, is not in dispute. On March 7, Green Haven corrections officer Jacqueline Trepanier filed a misbehavior report against Green alleging that Green had behaved inappropriately toward her. The misbehavior report stated that Green had mouthed the words "I love you" to Trepanier as he walked past her, and, at a later time, had forced papers on her. The papers were entitled "Basic Masonic Body Signs." Green was charged with violating several specified prison regulations, N.Y.Comp.Codes R. & Regs. tit. 7 ("7 NYCRR"), including those prohibiting inmates from harassing or verbally obstructing prison employees.
 
 
 3
 Green was served with the misbehavior report during the evening of March 7 and was placed in "keeplock." Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities; it is also used as an administrative confinement for prehearing housing of inmates facing disciplinary hearings. As to an inmate confined in keeplock pending a disciplinary hearing on account of a misbehavior report, New York regulations provide that unless an extension is authorized by the Commissioner of Corrections or his designee, the hearing must be commenced no later than 7 days after that confinement and completed no later than 14 days after the writing of the misbehavior report. See 7 NYCRR Secs. 251-5.1(a) and (b). No hearing with respect to the March 7 allegations was commenced until March 17.
 
 
 4
 In the meantime, on or about March 9, 1988, Green was transferred from keeplock to an Involuntary Protective Custody housing block ("IPC"). Assignment to IPC, a form of administrative, rather than disciplinary, segregation, is appropriate for
 
 
 5
 [a]n inmate who may be a potential victim or a witness likely to be intimidated, or who lacks the ability to live in the general facility community and who may for good cause be restricted from communication with the general inmate population, and who does not voluntarily accept admission into protective custody status.
 
 
 6
 7 NYCRR Sec. 330.2(b). A written IPC recommendation dated March 14 and served on Green that night recited the above "information received" as to Green's actions toward Trepanier and concluded as follows:
 
 
 7
 The Administration of this facility strongly believes your apparent infatuation with this officer could lead to a dangerous situation there for [sic ], for the safety of the staff member the administration feels you should be separated from this officer.
 
 
 8
 (Involuntary Protective Custody Recommendation for Anthony Green, issued by P. Bauvi, dated March 14, 1988.)
 
 
 9
 New York regulations provide that an inmate confined on IPC status "shall have a hearing, conducted within 14 days ..., to determine the need for protective custody admission." 7 NYCRR Sec. 330.3(b)(1). On March 15, Scully appointed Colwell to conduct such a hearing concerning Green, and Colwell summoned Green to appear on March 17. Colwell began the hearing by saying that it concerned the IPC recommendation filed by Bauvi on March 14 and asked Green whether he had been served with that charge. Green responded that the "original charge was served on [him] on the 6th." (Hearing Transcript March 17, 1988, at 1.) Colwell explained that because the charge was that Green had made displays of affection toward a female corrections officer, the matter was to be handled as an IPC matter rather than as a disciplinary or misbehavior matter; thus Green had been transferred from keeplock to IPC and the original misbehavior report "in essence was dismissed." (Id. at 2; see also id. ("This IPC is not a disciplinary hearing [sic]. It is not punitive in nature.").)
 
 
 10
 The hearing proceeded to a discussion of, inter alia, the scheduling of the remainder of the hearing in light of the availability of officer witnesses Green wished to call, who were off duty until Monday, March 21, and in light of medical appointments of Green himself on the morning and afternoon of March 21. Colwell stated that he might have to request that the hearing be continued to March 22 to accommodate these conflicts. Eventually, Colwell applied to Seitz for, and received, permission to extend the hearing to March 22. During the hearing, Colwell heard, inter alia, testimony on March 18 from inmate witnesses called by Green and testimony on March 22 from one officer witness called by Green. In a ruling issued on March 22, Colwell concluded that Green was a threat to the staff of the facility, and ordered that he remain in IPC until he received clearance from the facility's mental hygiene unit to the effect that he no longer posed a threat.
 
 
 11
 Green appealed Colwell's ruling. On March 31, 1988, Winch found that there was no evidence on which to hold Green in IPC and ordered him released.
 
 
 12
 In August 1988, Green, initially proceeding pro se, commenced the present Sec. 1983 action. His original complaint named as defendants Scully, Winch, Seitz, Colwell, "Terpanier [sic ]," and others, and alleged various constitutional violations arising out of the bringing and handling of the misbehavior report and IPC charges; subsequent amended complaints added and/or subtracted defendants and added claims challenging, inter alia, Green's March 1988 confinement in keeplock and IPC without completion of the hearing within a reasonable time.
 
 
 13
 Eventually, all claims asserted by Green were dismissed. To the extent pertinent to the present appeal, his claims against Scully, Winch, and Seitz were dismissed for failure to state a claim upon which relief could be granted because the court found that the complaint did not allege that these defendants were personally involved in the alleged deprivation of Green's right to a timely hearing. See Opinion and Order dated June 27, 1989. In an opinion dated September 2, 1992, published at 824 F.Supp. 1134, the district court also ruled, inter alia, that Green had failed to offer evidence that Colwell was personally responsible for delaying the initiation of the March hearing, since Colwell had not been appointed hearing officer until after the seven-day time limit for initiating a disciplinary hearing with respect to a misbehavior report had passed. Id. at 1142-44.
 
 
 14
 To the extent that Green claimed that Colwell had impermissibly delayed the completion of the March hearing, the district court granted summary judgment in favor of Colwell on the ground that he enjoyed qualified immunity. The court recognized that when an inmate is put in segregated confinement, the failure to conduct a hearing within the time allowed by state regulations may constitute a due process violation, id. at 1143-44 (citing Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir.1990), and Matiyn v. Henderson, 841 F.2d 31, 36 (2d Cir.), cert. denied, 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988)), but it noted that New York regulations permit a disciplinary-type hearing to extend beyond 14 days if (a) the delay is "authorized by the commissioner or his designee," (b) the record of the hearing reflects the reasons for the delay or adjournment, and (c) the inmate is made aware of those reasons, see 7 NYCRR Sec. 251-5.1(b). The district court held that "[w]here an extension which permits a reasonable delay in concluding a hearing is properly obtained, no violation of due process results." 824 F.Supp. at 1144. The court concluded that it had not been objectively unreasonable for Colwell "to obtain a one day extension to allow Plaintiff to obtain medical attention and to ensure that witnesses requested by the Plaintiff could appear on his behalf." Id.
 
 II. DISCUSSION
 
 15
 On appeal, Green challenges the dismissal of his claims against Scully, Winch, Seitz, and Colwell. These defendants defend the decisions and rationales of the district court, and argue that, alternatively, they are entitled to qualified immunity from all of Green's claims. We affirm the judgment of the district court dismissing the claims as to Colwell substantially for the reasons stated by the district court in its September 2, 1992 opinion. For the reasons that follow, we affirm the dismissal of the claims against Scully, Winch, and Seitz on various grounds.
 
 
 16
 The two threshold questions in any Sec. 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest. See, e.g., Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S.Ct. 1148, 1153-54, 71 L.Ed.2d 265 (1982); Russell v. Coughlin, 910 F.2d at 77; Matiyn v. Henderson, 841 F.2d at 34. We have previously held that a prisoner has a protected liberty interest in avoiding extended confinement in disciplinary keeplock, see, e.g., McKinnon v. Patterson, 568 F.2d 930, 938-39 (2d Cir.1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), and that prior to the imposition of such punishment the inmate is entitled to a hearing with various procedural safeguards, see, e.g., McCann v. Coughlin, 698 F.2d 112, 121-22 (2d Cir.1983). New York law has also given the inmate a protected interest in avoiding administrative confinement pending a disciplinary hearing, see, e.g., Gittens v. LeFevre, 891 F.2d 38, 40 (2d Cir.1989), and the inmate is thus entitled to an informal opportunity to be heard within a reasonable time after his confinement, perhaps even before his hearing, see id. at 40-41 (citing Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 871-72, 74 L.Ed.2d 675 (1983)). Similarly, when an inmate is segregated for an extended period of time for purposes other than disciplinary proceedings, he is entitled to a hearing, see Wright v. Smith, 21 F.3d 496, 499-500 (2d Cir.1994), and, because of the protected interest created by New York law, even if his administrative confinement is less than 14 days, an inmate must have "some notice of the charges against him, and a minimal opportunity to present his views to prison officials," Matiyn v. Henderson, 841 F.2d at 36.
 
 
 17
 In order to establish a Sec. 1983 claim for the deprivation of a protected liberty or property interest without due process, a plaintiff must also show that the defendants were personally involved in the unconstitutional conduct. There is no respondeat superior liability in Sec. 1983 cases. Monell v. Department of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).
 
 
 18
 A. The Rule 12(b)(6) Dismissals as to Scully, Winch, and Seitz
 
 
 19
 In addressing Green's original complaint, the district court dismissed the claims against Scully, Winch, and Seitz pursuant to Rule 12(b)(6) on the ground that Green had not alleged their personal involvement in the denial of his rights. We disagree with this ruling. Liberally construed, Green's original complaint alleged that Scully, Winch, and Seitz had appointed the hearing officer and had unduly delayed in making the appointment. This was a sufficient charge of personal involvement to withstand a motion for dismissal under Rule 12(b)(6).
 
 
 20
 Nonetheless, we conclude that the claim for undue delay in the commencement of the hearing was properly dismissed as to Winch and Seitz because subsequent undisputed evidence established that it was the responsibility of Scully as superintendent to appoint the hearing officer. Thus, summary judgment would have been appropriate in favor of Winch and Seitz with regard to the hearing's delayed commencement because the evidence conclusively demonstrated that they were not personally involved.
 
 
 21
 As to the claim that there was unreasonable delay in the hearing's completion, asserted for the first time in Green's first amended complaint, there was no allegation or evidence that Scully or Winch had any involvement in the timing of the conclusion of the hearing. Accordingly, that claim was properly dismissed as to Scully and Winch for lack of personal involvement.
 
 B. Summary Judgment as to Scully and Seitz
 
 22
 Green's claims against Scully for delay in initiation of the March hearing and against Seitz for delay in the completion of the hearing could not properly be dealt with on the ground of lack of personal involvement since Scully was responsible for appointing Colwell eight days after Green's initial keeplock confinement, and Seitz granted Colwell's request for an extension of the completion date beyond 14 days after that initial confinement. Nonetheless, assuming arguendo that these acts could be considered a denial of Green's due process rights, we conclude that Scully and Seitz were entitled to summary judgment dismissing these claims on the ground of qualified immunity.
 
 
 23
 Public officials enjoy a qualified immunity from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The test is one of "objective legal reasonableness," id. at 818-19, 102 S.Ct. at 2739, and in order for an official to be held personally liable, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Assuming that, in whatever circumstances are at issue, the inmate's right to a hearing within a reasonable time was clearly established at the time of his confinement, the officials are entitled to qualified immunity if it would have been objectively reasonable for them to believe that the time within which the hearing was in fact conducted was reasonable. See Gittens v. LeFevre, 891 F.2d at 42.
 
 
 24
 Even if compliance with the state's own regulations is insufficient to meet the requirements of due process, adherence to such regulations may be pertinent in considering whether a reasonable official would have known his actions violated the Constitution. In Gittens v. LeFevre, we held that even though the failure to grant an inmate held in keeplock an informal opportunity to be heard until the seventh day of his confinement violated his due process rights, the defendants were entitled to qualified immunity, noting that prior to the inmate's confinement "no case had ever marked the boundaries of reasonableness" of the right to be heard informally "with sufficient clarity to say that defendants' reliance on state law providing for a hearing within seven days was clearly in violation of Gittens' right[ ]." 891 F.2d at 42-43. See also Russell v. Coughlin, 910 F.2d at 79 (denying qualified immunity to prison officials for holding inmate in keeplock for 10 days without a hearing, in violation of even the state's seven-day rule).
 
 
 25
 Prior to Green's confinement, no case had clearly established what constitutes the minimum time within which a hearing must be held to determine whether an inmate may be kept in administrative confinement. In Matiyn v. Henderson, we held that the 14-day rule with respect to hearings for a type of confinement similar to IPC would be constitutionally deficient if it were interpreted to permit an inmate to be held without any opportunity to be heard, formally or informally, if he were released within 14 days. See 841 F.2d at 36. We made no suggestion there that due process required that the formal hearing provided by the New York regulation be held in less than the 14 days provided by that regulation. Nor are we aware of any decision of this Court ruling that a regulation permitting a reasonable adjournment of pending proceedings would be impermissible, or that a short adjournment on grounds such as those presented here would be unreasonable.
 
 
 26
 Applying these principles to Scully, we think it objectively reasonable for him to have believed that it was permissible for Green's hearing to commence within 14 days of his initial confinement. Although that confinement was initiated by the filing of a misbehavior report on March 7, and the pertinent state regulation required that a disciplinary hearing with regard to a misbehavior report be commenced within seven days, it had been Green Haven's policy since at least 1986 to treat displays of affection by male inmates toward female employees not as disciplinary matters but as matters for administrative confinement in IPC; New York regulations with regard to IPC confinement required "a hearing[ ] conducted within 14 days." 7 NYCRR Sec. 330.3(b)(1). Given the nature of the allegation and the fact that Green had been transferred fairly promptly after his initial confinement from keeplock to IPC, it was objectively reasonable for Scully to believe that the appointment of a hearing officer eight days after the initial confinement and six days before the state's 14-day deadline for IPC hearings did not violate Green's rights.
 
 
 27
 As to Seitz, it was objectively reasonable for him to believe that Green's due process rights would not be violated by a one-day extension of the state-imposed deadline for completing the hearing. Although there was no state regulation expressly authorizing extensions with regard to hearings on administrative confinement in IPC, the state did authorize such extensions of hearings with regard to an inmate's disciplinary confinement in keeplock, see 7 NYCRR Sec. 251-5.1(b). Since prison officials were generally subjected to more restrictive timing with respect to keeplock hearings than IPC hearings, it could hardly be unreasonable to conclude that if an extension could be granted with respect to a disciplinary hearing it could also be granted with respect to an IPC hearing.
 
 
 28
 Nor could it be unreasonable for Seitz to find that the circumstances relied on by Colwell in his request for an extension warranted a delay in the completion of the hearing. On March 17, the first day of the hearing, it transpired that the officer witnesses whom Green sought to call, see 7 NYCRR Sec. 254.5 (guaranteeing inmate's right to call witnesses), would not be available until March 21 and that Green himself would not be available on March 21. Seitz granted the shortest possible adjournment, ordering that the hearing be completed on March 22. Even if the one-day delay in the completion of the hearing could be found a denial of due process, which we doubt on the facts shown here, Seitz was entitled to summary judgment dismissing that claim on the ground of qualified immunity.
 
 CONCLUSION
 
 29
 We have considered all of Green's claims on this appeal and have found in them no basis for reversal. The judgment dismissing Green's claims against Scully, Winch, Seitz, and Colwell is affirmed for the reasons stated above.