**Easton BECKFORD, Plaintiff,**

v.

**Leonardo PORTUONDO, Superintendent at Shawangunk Correctional Facility; Glenn Goord, Commissioner of New York State Department of Corrections; Paul Annetts, Deputy Superintendent at Shawangunk** Correctional Facility; K. Decker, Correction Captain at Shawangunk Correctional Facility; G. Looney, Correction Sergeant at Shawangunk Correctional Facility; Sergeant Falkena, Correction Sergeant at Shawangunk Correctional Facility; Joseph Vitarius, Correction Officer at Shawangunk Correctional Facility; David Sperry, Correction Officer at Shawangunk Correctional Facility; D.E. Vitarius, Correction Officer at Shawangunk Correctional Facility; A. North, Correction Officer at Shawangunk Correctional Facility; John Doe, Inmate Porter at Shawngunk Correctional Facility; Jane Doe, Nurse at Shawangunk Correctional Facility; James Stinson, Superintendent at Great Meadow Correctional Facility; Michael Bintz, First Deputy Superintendent at Great Meadow Correctional Facility; H. Graham, Correction Captain at Great Meadow Correctional Facility; Sergeant Webster, Correction Sergeant at Great Meadow Correctional Facility; William Wolford, Correction Officer at Great Meadow Correctional Facility; James Stone, Commissioner of Department of Mental Health; Al Shimkunas, Mental Health Director at Great Meadow Correctional Facility; Dr. Faruki, Psychiatrist at Great Meadow Correctional Facility; Dr. B. Kim, Psychiatrist at Great Meadow Correctional Facility, Defendants.

No. 98–CV–350 LEK/GJD.

United States District Court, N.D. New York.

June 29, 2001.

Easton Beckford, Romulus, NY, pro se.

Mary E. Hill, New York State Atty. Gen.Albany, NY, for defendant.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Pursuant to a remand from the United States Court of Appeals for the Second Circuit dated January 10, 2001, Defendants' motion for summary judgment is presently before the Court. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

Plaintiff, Easton Beckford, is a wheelchair bound New York State inmate. He commenced the instant suit on February 26, 1998 against the above named defendants alleging that each violated rights granted him by various federal and state statutes as well as the United States Constitution. Particularly, Plaintiff's complaint raises four causes of action against various Defendants.

The first three causes of action claim that Defendants violated Plaintiff's Eighth Amendment rights by: (1) denying him access to showers, food, water, and mental health care; (2) committing assault and

battery against him;[1] and (3) deliberately disregarding his medical needs. His fourth cause of action alleges that Defendants unlawfully discriminated against him on the basis of his physical disability in violation of the Fourteenth Amendment, the Americans with Disability Act ("ADA"), and the Rehabilitation Act. The factual background for each claim is addressed *seriatim.*

## A. Eighth Amendment Conditions Claims

### 1. *Conditions at Shawangunk Correctional Facility*

Plaintiff's first cause of action is aimed, in part, at defendant Joseph Vitarius and defendant G. Looney. His complaint states that defendant Vitarius unlawfully retaliated against him on January 16, 1997 by refusing to allow him to shower. Plaintiff alleges that defendant Vitarius took this action against him because he had previously filed a section 1983 lawsuit against defendant Vitarious' son, defendant D.E. Vitarius.

Because he was unable to shower, Plaintiff alleges that he decided to maintain his cleanliness using the facilities available to him. He took "a bird bath" in his cell sink. In response, defendant Vitarius allegedly turned off the water to his cell for six days. When Plaintiff complained to defendant Looney about the lack of water in his cell, defendant Looney allegedly did nothing to rectify the situation.

Failing to obtain water from either defendant Vitarius or defendant Looney through his oral requests and needing clean water to maintain his hygiene as a result of bladder problems, Plaintiff took feces out of his cell toilet and smeared them on the cell walls. He then proceeded to set fire to wastepaper in his cell.[2]

After the fire was put out, defendants Sperry and Falkena removed Plaintiff from his soiled cell and placed him in a bare cell containing a plexiglass shield designed to protect officers from any additional misbehavior.[3] Additionally, Plaintiff was put on a restricted diet, allegedly denied exercise privileges without written notice, and was refused all opportunities to shower for approximately one week.[4] Although he complained to defendants Annetts, Decker, Looney, and Portuondo regarding his treatment, they did not remedy the situation. According to Plaintiff, the above actions violated his Eighth Amendment Rights.

### 2. *Conditions at Great Meadows Correctional Facility*

Because of Plaintiff's psychological disorders, he was transferred to Great Meadows Correctional Facility and placed in the facility's psychiatric observation unit.

---

**1.** Plaintiff's also claims that the alleged assault and battery violated New York state law. The Court notes that Defendants have not moved for summary judgment regarding Plaintiff's state law assault and battery claims. It therefore does not address them in the present opinion except to point out that as to each Eighth Amendment assault claim that the Court grants Defendants summary judgment, it also grants them summary judgment on the duplicative state law assault claim.

**2.** When defendants Vitarius and Sperry responded to the fire alarm, they allegedly assaulted Plaintiff. The facts surrounding this claim are described below.

**3.** Plaintiff had allegedly thrown a cup of urine and feces at defendant Vitarius.

**4.** Plaintiff also alleges that defendants Vitarius and North denied him morning and midday sustenance in the form of a "diet loaf" from January 17, 1997 to January 24, 1997. A "diet loaf" is a baked nutritional provision given to prisoners who are placed on restricted diets.

While there, Plaintiff alleges that defendants Webster, Wolford, and two others entered his cell and removed his bedding and clothing because he refused to cut a fingernail.[5] Defendants Webster and Wolford also allegedly denied Plaintiff all out of cell recreation activities from July 7, 1997 until December 26, 1997. Plaintiff alleges that defendant Faruki condoned the taking of his bedding and clothing and that defendants Stinson and Bintz condoned the denial of Plaintiff's recreation.

## B. Eighth Amendment Assault Claims

### 1. *Shawangunk Assault Claims*

Plaintiff's first Eighth Amendment assault claim arises out of the fire he lit in his cell at Shawangunk Correctional Facility. Responding to the fire alarm, defendants Vitarius and Sperry proceeded to put it out using fire extinguishers. Each officer, according to Plaintiff, also decided to assault him after putting out the fire by spraying their fire extinguishers into his face and chest.

On January 18, 1997, the day after Plaintiff was placed into his new cell, defendants D.E. Vitarius, Looney, and North stood by an open electronic gate while defendant John Doe, an inmate porter, threw a cup of bleach under the plexiglass shield and blocked Plaintiff's only open source of fresh air. As a result, Plaintiff allegedly passed out and was taken to see defendant Jane Doe. After examining him with a pen flashlight, defendant Jane Doe sent Plaintiff back into his cell without providing any further medical treatment.

### 2. *Great Meadows Assault Claim*

Plaintiff claims that defendants Webster's and Wolford's removal of bedding and clothing from his cell also constituted an assault against him in violation of the Eighth Amendment.

## C. Eighth Amendment Medical Needs Claim

Ultimately, Plaintiff was transferred to Great Meadow's mental care unit but was allegedly denied access to its mental health programs for punitive reasons. Plaintiff alleges that defendants Stinson, Bintz, and Graham all condoned this punishment. He also claims that defendants Shimkunas and Kim refused to intercede on his behalf and help Plaintiff obtain his needed mental health treatment. According to Plaintiff, Defendants' denial of access to mental health treatment deliberately disregarded his serious medical needs in violation of the Eighth Amendment.[6]

## II. DISCUSSION

### A. Standard of Review

The standard for summary judgment is well-established. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is genuinely disputed only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a

---

**5.** Plaintiff also alleges that these officers assaulted him during this incident.

**6.** On the basis of the preceding facts, Plaintiff's fourth cause of action alleges simply that "Defendants have willfully and knowingly dis-criminated against Plaintiff, solely on the basis of his disabilities" and in violation of the Fourteenth Amendment, the ADA, and the Rehabilitation Act.

motion for summary judgment, all evidence must be viewed and all inferences must be drawn in a light most favorable to the nonmoving party. *See City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon the movant's satisfying that burden, the onus then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "but must set forth specific facts showing that there is a genuine issue of fact for trial." *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

## B. Plaintiff's Eighth Amendment Conditions Claims

### 1. *Standard for Eighth Amendment Conditions Claims*

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, *see Rhodes v. Chapman*, 452 U.S. 337, 344–45, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), prohibits the infliction of "cruel and unusual punishments" on inmates, US. Const. amend. VIII. This prohibition, although not mandating that prisoners be confined in "comfortable prisons," *Rhodes*, 452 U.S. at 348, 101 S.Ct. 2392, does require that the conditions of confinement be at least

"humane," *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, if a prisoner is deprived of "the minimal civilized measure of life's necessities" by a prison official who exhibits a "sufficiently culpable state of mind" amounting to at least deliberate indifference, the prisoner's Eighth Amendment right to humane conditions of confinement will be violated. *Id.* at 834, 114 S.Ct. 1970; *see also Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir.2001).

### 2. *Plaintiff's Denial of Access to Showers and Water Claims*

■ Plaintiff's allegations against defendant Joseph Vitarius assert, in part, that he denied him access to a shower on January 16, 1997 in retaliation for a civil rights complaint he filed against defendant Vitarius' son. He further alleges that the water to his cell was turned off for six days after he decided to clean himself in his cell sink and that defendant Looney refused to turn it back on despite Plaintiff's repeated requests. Accepting for argument's sake the alleged retaliatory nature of defendant Vitarius' refusal to allow Plaintiff to take a shower, this Court concludes that the deprivation at issue, the loss of one shower, is not objectively serious enough to constitute an Eighth Amendment violation.

■ As to the suspension of his in-cell water privileges for six days, the Court notes that Plaintiff was issued a deprivation order stripping him of these privileges because he had previously flooded the cell. Pursuant to the order, he was not denied complete access to water. Instead, prison officials restricted his water access rights, in an effort to prevent further abuse of his in-cell privileges, by issuing him water at least twice per shift over the course of the order's duration. These restrictions, when combined with Plaintiff's apparent misbehavior, do not rise to the level of objective

seriousness needed to satisfy the Eighth Amendment.

Nowhere has it been held that prisoners are entitled to complete and unfettered access to water or showers. *See, e.g., Markiewicz v. Washington,* 175 F.3d 1020, 1999 WL 196596, at *1 (7th Cir. March 25, 1999) (holding that prison official's refusal to allow a prisoner access to two showers did not state a claim of unconstitutional prison conditions); *Cosby v. Purkett,* 782 F.Supp. 1324, 1329 (E.D.Mo.1992) (concluding that when a prisoner is allowed to shower once every seventy-two hours, the Eighth Amendment is not violated). Instead, an Eighth Amendment violation is considered objectively serious when prison officials subject inmates to conditions that violate basic standards of "human decency." *Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir.1988) (quoting *Wright v. McMann,* 387 F.2d 519, 526 (2d Cir.1967)); *see also Beckford v. Irvin,* 49 F.Supp.2d 170, 180 (W.D.N.Y.1999). Not only does Plaintiff's complaint fail to satisfy this standard since he was given access to water at least twice per officer shift, given Defendants' legitimate interest in maintaining the prison's hygiene by preventing Plaintiff from "taking bird baths" in his sink and otherwise flooding his cell, this Court holds that, as a matter of law, Defendants' did not objectively deprive Plaintiff of the minimal civilized measures of life's necessities when they suspended his in-cell water privileges for six days but provided him with alternative access to water at least twice per officer shift. Accordingly, to the extent that Plaintiff's first cause of action seeks relief under the Eighth Amendment for unsanitary conditions related to the suspension of his in-cell water rights for six days and denial of shower privileges for one day, Defendants are entitled to summary judgment and it is so granted.

■ The Court does note that Defendants are not entitled to summary judgment as to their alleged failure to allow Plaintiff to shower for a period of one week following the suspension of his water privileges. In this Court's view, although there is no bright line test to determine how many showers a prisoner must receive in order to satisfy the requirements of the Eighth Amendment, when, as here, Plaintiff has advanced facts indicating that he has bladder problems and needs to clean himself periodically in order to prevent the outbreak of "decubitus ulcers," denial of all shower privileges for a period of one week might be objectively serious enough for a jury to conclude that an Eighth Amendment violation has occurred. In addition, because Defendants were aware of Plaintiff's medical conditions, the facts as presented on the record do give rise to an inference of a sufficiently culpable state of mind needed to overcome Defendants' motion for summary judgment. Accordingly, to the extent Plaintiff's first cause of action seeks to hold Defendants liable under the Eighth Amendment for their failure to allow him access to shower privileges for one week, it survives Defendants' motion for summary judgment.

2. *Plaintiff's Lack of Bedding and Bare Cell Claims*

a. Shawangunk Bedding and Bare Cell Claims

■ Plaintiff's Shawangunk lack of bedding and bare cell allegations fail because Plaintiff has not advanced sufficient facts to satisfy the subjective prong of the Eighth Amendment test. Angry that the water was turned off in his cell, Plaintiff decided to rectify the situation by smearing feces on his cell walls and setting fire to wastepaper there. That defendants Falkena and Sperry put Plaintiff in a new cell behind a plexiglass shield designed to protect officers was eminently reasonable

considering that Plaintiff had allegedly thrown a cup of urine and waste at other officers. Furthermore, Plaintiff's admitted destruction of prison property also gave prison officials needed justification to remove any such property and temporarily place Plaintiff in a cell containing only a mattress. Although placement of any prisoner in a cell that contains only four walls and a mattress is a matter of serious concern to the Court, the circumstances in this case were extraordinary and required prison officials to take immediate action to protect themselves and other prisoners from Plaintiff's misbehavior. Given these undisputed facts, this Court holds that Defendants' did not act with a "sufficiently culpable" state of mind when they placed Plaintiff behind a plexiglass shield and removed all items from his cell except a mattress.

Moreover, considering the fact that Plaintiff does not allege that the heat was turned off in his cell, *see Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir.1988), or that he was otherwise forced to live in an unsanitary cell after he was removed from his soiled cell, *see Gaston,* 249 F.3d at 166, the Court concludes that the deprivations imposed do not satisfy the objective prong of the Eighth Amendment. When a prison inmate continuously violates prison rules, destroys prison property, and assaults guards with human waste, it is objectively reasonable for prison officials to take preventative action and temporarily place the unruly inmate in a cell containing only the minimal civilized measure of life's necessities. A clean, sanitary, warm cell containing only a mattress satisfies this obligation. Thus, Defendants are entitled to summary judgment regarding Plaintiff's Shawangunk "bare cell" claims.

b. Great Meadows Bedding and Bare Cell Claims

■ The situation regarding defendant Webster's and Wolford's removal of bedding and clothing from Plaintiff's cell at Great Meadows is different from the action taken against Plaintiff at Shawangunk. At Great Meadows, Plaintiff alleges that he was forced to sleep on cold steel for no other reason than because he refused to cut a fingernail. The facts as presented on the record do satisfy the subjective element needed to overcome defendant Wolford's and Webster's summary judgment motion regarding their alleged actions against Plaintiff. Simply stated, it is possible for a jury to conclude that because their actions against Plaintiff were grossly out of proportion to the alleged infraction, they were acting with the intent to at least deprive him of his most basic necessities.

Furthermore, because Plaintiff was not engaging in the pattern of abuse and misbehavior that he exhibited at Shawangunk, it is also possible that a jury could conclude that forcing a prisoner to sleep without bedding and clothing, for even one night, simply because the prisoner refuses to cut a fingernail is objectively unreasonable. *Cf. Williams v. Scott,* No. 96–3379, 1997 WL 312273 at *2 (7th Cir. June 5, 1997) (concluding that an Eighth Amendment violation for removal of bedding did not occur when the bedding was returned to the prisoner at night); *see also Blissett v. Coughlin,* 66 F.3d 531, 537 (2d Cir.1995) (noting that deprivation of adequate clothing and bedding bearing absolutely no relationship to any security measure amounts to unnecessary infliction of pain when a prisoner is held in isolation and permitted only underwear and a mattress). Given the existence of material issues of fact regarding Plaintiff's access to clothing during this incident as well as the material issues of fact regarding the security risk he posed to defendants Webster and Wolford when they took this action against him, Defendants' motion for summary

judgment as it relates to Plaintiff's allegations regarding the removal of his bedding and clothing at Great Meadow is denied.

### 3. *Plaintiff's Dietary Allegations*

■■ Substantial deprivation of nutritionally adequate food violates the Eighth Amendment if the food is served "in a fashion that presents an immediate danger to the inmate's health or well-being." *Chapdelaine v. Keller,* No. 95–CV–1126, 1998 WL 357350, at *11 (N.D.N.Y. Apr.16, 1998); *see also Robles v. Coughlin,* 725 F.2d 12, 16 (2d Cir.1983). When a prison guard deprives a prisoner of two of the regularly three meals served each day, the objective prong of the Eighth Amendment may be met if the defendants do not satisfy their burden of showing that the one meal served is nutritionally adequate. *See Cunningham v. Jones,* 567 F.2d 653, 660 (6th Cir.1977). Additionally, if a dietary restriction is imposed as part of "a malicious attempt to cause plaintiff harm," then the subjective prong of the Eighth Amendment test will be met. *James v. Coughlin,* 13 F.Supp.2d 403, 412 (W.D.N.Y.1998).

■ Plaintiff's allegations regarding the nutritional adequacy of his meals from January 17—24, 1997 satisfy both elements of the Eighth Amendment test and are sufficient to overcome Defendants' motion for summary judgment. Particularly, Plaintiff claims that defendants D. Vitarius and North failed to provide him with his morning and midday "diet loaf" in retaliation for his previous misbehavior. Although the Court does not doubt the veracity and need to place Plaintiff on a restricted diet because of his frequent outbursts, it does not have sufficient facts on

the record before it to determine whether Plaintiff's basic nutritional requirements were met when he was allegedly provided with only one "diet loaf" per day.[7] Moreover, given defendants Vitarius's and North's alleged retaliatory refusal to provide Plaintiff with his morning and midday diet loafs even though he was allegedly entitled to them, the Court holds that material issues of fact exist as the subjective element of the Eighth Amendment test. Accordingly, to the extent that Defendants seek summary judgment for their alleged refusal to provide Plaintiff with a morning and midday diet loaf from January 17—24, 1997, that motion is denied.

### 4. *Denial of Plaintiff's Recreation Privileges for Six Months*

■ Denial of a prisoner's recreation privileges for an extended period of time violates the Eighth Amendment if the denial results in a deprivation of the "of the minimal civilized measure of life's necessities" and the defendants act with a sufficiently culpable state of mind amounting to deliberate indifference to a serious need. *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392; *see also Anderson v. Coughlin,* 757 F.2d 33, 36 (2d Cir.1985). As recognized by the Seventh Circuit, it is not the right to recreation, but, rather, the right to exercise that the Eighth Amendment protects. *See French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985). At the same time, "neither an occasional day without exercise when weather conditions preclude outdoor activities nor reliance on running, calisthenics, and isometric and aerobic exercises in lieu of games is cruel and unusual punishment." *Anderson,* 757 F.2d at 36.

---

**7.** The Court expresses no opinion about the constitutional adequacy of temporarily placing prisoners on an all "diet loaf" diet as long as the basic requirements of due process are met before placing the prisoner on that diet and the prisoner is provided with access, at a minimum, to three "diet loafs" per day.

In the instant case, Plaintiff alleges that he was denied all outdoor recreation for a period of six months. This broad allegation encompasses a denial of exercise privileges and goes further. It seems to assert that twenty four hour confinement in a cell without any access to fresh air and other outdoor activities constitutes an Eighth Amendment violation. *See Spain v. Procunier,* 600 F.2d 189, 199 (9th Cir.1979) (holding that denial of fresh air and outdoor recreation, while not a per se violation of the Eighth Amendment, constituted cruel and unusual punishment as applied to inmates confined for a period of years in continuous segregation with meager out of cell movements and minimal contact with others). Construing Plaintiff's allegations in the light most favorable to him and acknowledging the well settled law of this Circuit that segregated confinement with one hour of outdoor exercise is constitutionally adequate, *see Sostre v. McGinnis,* 442 F.2d 178, 193–94 (2d Cir. 1971), the Court concludes that Defendants are entitled to summary judgment for Plaintiff's Eighth Amendment denial of outdoor recreation claim.

The documentary evidence Defendants submitted in support of their motion for summary judgment indicates that during the six month time frame Plaintiff alleges that he was kept in his cell, he was placed on "keep lock" status. Defendant Shimkunas testified by affidavit that during the time Plaintiff was placed on "keep lock" status he was allowed the maximum one hour of recreation time per day that is granted to prisoners placed on "keep lock." In response, Plaintiff's exhibit 29, a letter from the prison's staff attorney, indicates that initially Plaintiff was not given his allocated one hour of outdoor recreation time because the wheelchair access ramp to the outdoor facility was broken. On December 29, 1997, Superintendent Stinson notified the staff attorney that the wheelchair ramp had been fixed and that Plaintiff would be scheduled for his outdoor recreation period.

Nevertheless, Plaintiff's exhibit 36 indicates that even after the repairs to the wheelchair ramp were made he was still denied access to the outdoor recreation facilities at the prison but provided one hour of recreation time at the Intermediate Core Program's facilities instead. Although Plaintiff's letter makes much note of the fact that he should have been able to use the dip bar contained in the Intermediate Core Program's facility, the Court is unwilling to assume that access to a dip bar or fresh air is constitutionally required when a disruptive prisoner is kept on "keep lock" status for a period of six months but allowed one hour of alternative recreation time per day. At most, upon the record before the Court, Plaintiff's allegations that he was denied all access to out of cell activities is factually incorrect and he simply disagrees with the type of out of cell exercise and recreation privileges afforded. Moreover, the out of cell recreation time afforded Plaintiff was not objectively unreasonable. Accordingly, Plaintiff's Eighth Amendment claim regarding the denial of out of cell activities for six months fails and Defendants are entitled to summary judgment as to this claim.[8]

---

8. Moreover to the extent that Plaintiff seeks to hold defendants' Stinson and Bintz liable for the alleged Eighth Amendment deprivations at issue, those claims are also deficient as Plaintiff has not shown that they either participated in the alleged constitutional violations, failed to remedy the alleged violations after being informed of them, created a policy or custom under which the violations occurred, were grossly negligent in supervising subordinates who committed the allegedly wrongful acts, or exhibited deliberate indifference to

## C. Plaintiff's Eighth Amendment Assault Claims

### 1. Standard for Eighth Amendment Assault Claims

The Eighth Amendment's prohibition on the infliction of cruel and unusual punishment on inmates precludes the infliction of "unnecessary and wanton" pain on an inmate. *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). To validly assert an Eighth Amendment claim for excessive use of force, an inmate must prove two components, one subjective and the other objective. *See Hudson v. McMillian*, 503 U.S. 1, 7–8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Blyden v, Mancusi*, 186 F.3d 252, 262 (2d Cir.1999). The subjective component focuses on the defendant's motive for his conduct. *See Blyden*, 186 F.3d at 262. The objective component focuses on the conduct's effect in light of contemporary standards of decency. *See id.*

In order to prove that the defendant had the necessary state of mind to meet the subjective prong of the Eighth Amendment test, there must be a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' " *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *see also Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000); *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). Whether particular conduct can be characterized as wanton turns on "whether the force was applied in a good-faith effort to restore discipline, or maliciously and sadistically to cause harm." *See Sims*, 230 F.3d at 20 (quoting *Hudson*, 503 U.S. at 7, 112 S.Ct. 995). When determining whether a defendant's state of mind was wanton, courts must "evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Hudson*, 503 U.S. at 8, 112 S.Ct. 995 (quoting *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

The absence of a serious injury is relevant to the wantonness of inquiry, "but does not end it." *Id.* If it is shown that the defendant had a wanton state of mind when engaging in the alleged misconduct, he will have per se satisfied the subjective component of the Eighth Amendment regardless of whether "significant injury is evident." *Griffin*, 193 F.3d at 91. The rationale behind this rule is that "in the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.... This is true whether or not significant injury is evident." *Hudson*, 503 U.S. at 9 112 S.Ct. 995.

The objective component of the Eighth Amendment test focuses on the harm done; but the amount of harm that must be shown depends on the nature of the

---

Plaintiff's rights by failing to act on information indicating that an unconstitutional act was occurring. *See Colon v. Coughlin* 58 F.3d 865, 873 (2d Cir.1995). For example, defendant Stinson, after receiving notification that Plaintiff's access to outdoor recreation was impeded because of needed repairs to the wheelchair ramp, made all necessary repairs and scheduled him for his recreation period. Defendant Bintz after receiving written notification from Plaintiff regarding his complaints immediately referred the matter to DSS Greene for handling and response. Neither failed to act or respond to the alleged constitutional violations at issue and both acted appropriately. As such, summary judgment to both defendants Stinson and Bintz is warranted and the Court grants Defendants' motion for summary judgment as it relates to them.

claim. *See Sims,* 230 F.3d at 20. The objective component is "contextual and responsive to contemporary standards of decency." *Hudson,* 503 U.S. at 8 112 S.Ct. 995. Of course "[n]ot every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973). As such, an allegation that indicates only a de minimis use of force will "rarely suffice to state a constitutional claim," *Sims,* 230 F.3d at 22 (quoting *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993)), unless the use of force is the "sort repugnant to the conscience of mankind," *Id.* (quoting *Hudson,* 503 U.S. at 10, 112 S.Ct. 995). Accordingly, if a prison guard subjects a prisoner to excessive force, and does so maliciously and sadistically, the prison guard violates the prisoner's Eighth Amendment rights. *Id.*

### 2. *Fire Extinguisher Assault Incident*

 Applying these principles to the instant case reveals that material issues of fact exist as to each of Plaintiff's assault claims. For example, defendant J. Vitarius and Sperry's alleged decision to spray Plaintiff with their fire extinguishers as punishment for his misbehavior and previous altercations with them does, if proven, rise to the level of wantonness necessary to impose liability on them for their actions since they were not done as part of a good-faith effort to restore discipline. Rather, Defendants allegedly sprayed Plaintiff with their fire extinguishers in a malicious and sadistic manner because of their anger with him over his misbehavior.

As this Court has held, when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a per se violation of the Eighth Amendment occurs. *See Romaine v. Rawson,* 140 F.Supp.2d 204, 212–13 (N.D.N.Y.2001). Moreover, Defendants' claim that summary judgment should be granted to them on this claim because Plaintiff did not suffer injury neglects the fact that the absence of a serious injury although relevant to the Eighth Amendment inquiry "does not end it." *Hudson,* 503 U.S. at 8, 112 S.Ct. 995. Enough facts exist on the record to support the fact that Defendants' alleged assault was wanton and resulted in minor injury to Plaintiff.

Of course, it may turn out at trial that defendants' Vitarius and Sperry did not intentionally spray Plaintiff with their extinguishers maliciously but instead, in the confusion surrounding the fire, sprayed Plaintiff inadvertently. If this is shown, Plaintiff's claim will fail. At this point, however, the Court is in no position to determine whether this in fact happened. As such, Defendants' motion for summary judgment as to this claim is denied.

### 3. *Bleach Assault Incident*

 For these same reasons, defendants D.E. Vitarius, North, and Looney are not entitled to summary judgment for their alleged participation in the bleach incident. Although they did not actively participate in the incident, Plaintiff alleges that they stood passively at an electronic gate while defendant John Doe, an inmate porter, assaulted him with bleach.[9] To

---

**9.** As to defendant John Doe, the Court notes that Plaintiff has not identified or served him with a copy of the complaint. Consequently, he cannot be held liable for his participation in the alleged assault without, at a minimum, ascertaining his identity. The Court, therefore, has no choice but to dismiss Plaintiff's complaint against defendant John Doe without prejudice to refile in the event that his identity is determined and service of process is properly effectuated upon him.

succeed on this failure to protect claim, Plaintiff must show that defendants D.E. Vitarius, North, and Looney had knowledge of a substantial or pervasive risk of serious harm to him and that they acted with deliberate indifference to his safety by failing to correct the situation. *See Farmer,* 511 U.S. at 832, 114 S.Ct. 1970; *Villante v. Department of Corrections,* 786 F.2d 516, 519 (2d Cir.1986); *Estate of Davis v. Delo,* 115 F.3d 1388, 1394 (8th Cir.1997); *Webb v. Goord,* 197 F.R.D. 98, 103 (S.D.N.Y.2000).

■■■ In other words, if these defendants witnessed defendant John Doe deliberately pour bleach into Plaintiff's cell while cutting off his supply of oxygen knowing that the other inmate intended to harm Plaintiff, and they did nothing to stop the other inmate, they will have violated Plaintiff's Eighth Amendment rights. Alternatively, it is possible that these defendants may not have been in a position to witness the alleged assault given that they were standing behind an electronic gate or that they reasonably believed that defendant John Doe was legitimately cleaning Plaintiff's cell. Rather than speculate further on these possibilities, the Court notes that the record is replete with material issues of fact regarding this incident for a jury to resolve.[10]

**4.** *Great Meadows Assault Incident*

■■■ The allegations contained in Plaintiff's complaint regarding the actions of defendants Wolford and Webster do not indicate that they did anything other than remove Plaintiff's bedding and left him to sleep on the steel floor of his cell. Nowhere does it indicate that they used force against Plaintiff or otherwise caused him to fear for his physical safety. Consequently, their motion for summary judgment regarding Plaintiff's assault claim against them is granted.[11]

**D. Plaintiff's Eighth Amendment Medical Needs Claim**

■■■ In order to establish an Eighth Amendment claim arising out of inadequate medical care, as made applicable to states by the Fourteenth Amendment, a prisoner must prove "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Irby v. Frisnia,* 119 F.Supp.2d 130, 132 (N.D.N.Y. 2000). This standard includes both subjective and objective components. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citations omitted).

**10.** Like defendant John Doe, Plaintiff has not provided the Court with the identity of defendant Jane Doe nor served her with process. Unlike, defendant John Doe, however, Plaintiff's allegations against defendant Jane Doe do not link her to the assault. Instead, Plaintiff avers simply that she participated in the bleach incident because, after the assault, she only examined him with a pen flash light and should have done something more. Moreover, to the extent that Plaintiff is arguing that she was deliberately indifferent to his legitimate medical needs, at most his allegation is based upon a disagreement with her over the character of the medical treatment afforded and is therefore deficient. *See Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.1992).

Accordingly, even if Plaintiff is able to determine her identity and does properly serve her with the complaint, his allegations against her would still be legally insufficient. As such, the Court dismisses defendant Jane Doe from the above captioned action with prejudice.

**11.** As to each of the five claims surviving summary judgment, two assaults, deprivation of food, loss of showers for a week causing an ulcer outbreak, and stripping of bedding and clothing, the Court concludes that there are material issues of fact regarding the actual physical injuries Plaintiff suffered that the jury must resolve. *See Williams v. Goord,* 142 F.Supp.2d at 427 n. 20 (S.D.N.Y.2001).

Second, subjectively, the defendant "must act with a sufficiently culpable state of mind." *Id.* An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970 . The Supreme Court has held that a showing of mere negligence "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment" and that "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106, 97 S.Ct. 285; *see Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000) (citing *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.")).

As to whether the alleged deprivation of medical treatment at issue in this case was objectively serious, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists," Plaintiff has not alleged facts meeting this threshold. For example, even accepting that Plaintiff's mental health care was far from optimum, he was provided significant psychotropic medication, bi-weekly individual therapy sessions, and monthly medical reviews while at Great Meadows. At most, Plaintiff disagrees with the treatment offered and alleges that he should have received more time with a psychiatrist, additional group therapy treatment, access to the facility's Intermediate Core Program, and increased

out of cell and outdoor activity. Nowhere does Plaintiff allege that the failure to provide him these additional treatments resulted in an urgent threat to his life or limb or was otherwise so grossly inadequate to rise to the level of deliberate indifference.

Because Plaintiff's complaint is based upon a disagreement with prison officials regarding the character of medical treatment afforded, it is deficient as a matter of law. *See Ross,* 784 F.Supp. at 44. Moreover, even assuming for arguments sake that the record indicated that defendants Stinson, Bintz, Graham, Stone, Webster, and Wolford negligently denied Plaintiff access to the additional treatment which he desired, that too is deficient as a matter of law. *See Hathaway,* 37 F.3d at 66. As a result, the Court grants Defendants' motion for summary judgment as to Defendant's third cause of action.[12]

### E. Fourteenth Amendment, ADA, and Rehabilitation Act Claims

#### 1. *Fourteenth Amendment Claims*

 Plaintiff's due process claims are all based upon similar premises. He alleges that Defendants collectively deprived him of his right to due process by failing to obtain and provide him with deprivation orders and a hearing when they restricted his diet, access to water, outdoor recreation, and placed him behind a plastic cell shield. In response, Defendants provided the Court with copies of each written deprivation order provided Plaintiff stipulating the restrictions that were imposed and stating that Plaintiff should write to the Deputy Superintendent to contest the need for the continuing deprivation orders.

---

**12.** Additionally, because the Court concludes that the level of mental health treatment offered Plaintiff was constitutionally adequate, his claims against defendants Shimkunas, Fa-

ruki, and Kim for failing to intercede on his behalf are also deficient and the Court grants Defendants' motion for summary judgment as to these claims.

The threshold question that the Court must address before determining the merits of Plaintiff's procedural due process claim is whether Plaintiff has established a liberty or property interest that is entitled to protection under the United States Constitution or federal statutes. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). If Plaintiff establishes such an interest, the Court must then determine the process that was due before a deprivation of that interest could occur. *See Green*, 46 F.3d at 194. In the instant case Plaintiff's claims regarding his diet, water, recreation time, and placement behind a plastic cell shield each attempt to implicate a protected liberty interest.

To determine whether Plaintiff's claims actually implicate a protected liberty interest this Court must first find that the restrictions placed on Plaintiff constituted an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Frazier*, 81 F.3d 313, 317 (2d Cir.1996). Second, the Court must conclude that the state has granted its inmate, by regulation or statute, a protected liberty interest in remaining free from that confinement. *Frazier*, 81 F.3d at 317; *see also Cespedes v. Coughlin*, 956 F.Supp. 454, 469 (S.D.N.Y.1997).

In the instant suit, Plaintiff's allegations regarding the restrictions placed on his diet, water, and placement behind a cell shield were all of minimal duration, not exceeding a week. A number of Courts in this Circuit have compared various disciplinary measures on prisoners to the standard expressed in *Sandin* and have concluded that even lengthy administrative and punitive confinements in "keep lock" or "special housing units" do not implicate protected liberty interests. *See, e.g., Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (holding that 101 days in administrative segregation where inmate is confined to cell for 23 hours per day with one hour of recreation, three showers a week, and most other privileges were denied did not constitute an atypical and significant hardship warranting due process under *Sandin*); *Carter v. Carriero*, 905 F.Supp. 99, 104 (W.D.N.Y.1995) (270 days confinement in SHU does not implicate a liberty interest); *Rivera v. Coughlin*, No. 92–3404, 1996 WL 22342, at *4 (S.D.N.Y. Jan. 22, 1996) (89 days in keeplock does not implicate a liberty interest). While there are no bright line rules in this Circuit as to when segregated confinement in a special housing unit becomes atypical, *see Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir.2000), Judge Newman has indicated that segregated confinement in normal special housing unit conditions lasting more than 180 days should typically meet the *Sandin* standard, *See Colon v. Howard*, 215 F.3d 227, 232 (2d Cir.2000) (noting that segregated confinement for 305 days in a special housing unit meets the *Sandin* standard).

In light of the minimal amount of time that Plaintiff's dietary, water, and plastic shield restrictions were put in place, the Court holds, as a matter of law, that his confinement was not sufficiently atypical to implicate a protected liberty interest. As to Plaintiff's confinement in "keep lock" for a period of six months without any hearing, the Court, although troubled by the length of this confinement and the failure of prison officials to afford Plaintiff a hearing to challenge his confinement, finds, in light of the existing precedent in this Circuit holding that confinement in keep lock or a special housing unit for periods up to and including six months does not implicate a protected liberty interest, that Plaintiff's Fourteenth Amendment due process claims are deficient. *See Carter*,

905 F.Supp. at 104. Consequently, Defendants motion for summary judgment as it relates to Plaintiff's due process claims is granted.

### 2. ADA Claims

■ Title II of the Americans with Disabilities Act ("ADA") applies to inmates in state prisons. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). To state a claim under Title II of the ADA, a prisoner must show that i) he or she is a qualified individual with a disability; ii) that was excluded from participation in, or denied the benefits of some service, program, or activity by reason of the disability; and iii) the entity providing the service, program, or activity is a public entity. *See Clarkson v. Coughlin*, 898 F.Supp. 1019, 1037 (S.D.N.Y.1995). It is undisputed that Plaintiff is disabled and that he was denied access to outdoor recreation and placed in a cell that was not equipped for wheelchair access but did contain a plastic shield.

Defendants' motion for summary judgment raises no issue regarding the alleged discriminatory foundation of Plaintiff's claim. Instead, it challenges Plaintiff's claim strictly on Constitutional grounds. In essence, Defendants assert that they are entitled to summary judgment on Plaintiff's ADA claims because the Eleventh Amendment prohibits Plaintiff from bringing them against the State of New York and its officials.

Without reaching the merits of the Constitutional question Defendants raise and recognizing that Defendants have not made any attempt to put forward other articulated grounds as to why they are entitled to summary judgment on Plaintiff's ADA claims, the Court nevertheless finds that, on the undisputed record before it, these claim are legally deficient. Of particular note is the fact that the placement of Plaintiff in a cell that was not wheelchair equipped was a temporary response to his decision to assault prison guards with feces and urine. At the time he was placed in this cell, no cells at Shawangunk Correctional Facility were equipped with both plastic shields and wheelchair accessibility.

To conclude that Defendants placed him in a cell that was not wheelchair equipped because of an overt intent to deprive him of a service, program, or activity by reason of his disability stretches all bounds of credibility. Plaintiff was placed in a cell not containing wheelchair accommodations because he was a danger to other inmates and officers and once his misbehavior stopped, he was placed back in a wheelchair accessible cell. Simply stated, no reasonable jury could conclude that Defendants had an intent to discriminate against Plaintiff on the basis of his disability when they placed him in a cell equipped with a plastic shield and not equipped with wheelchair accommodations. As a result, Defendants are entitled to summary judgment as to Plaintiff's ADA claims that are based on their alleged failure to place him in a plastic shield cell with wheelchair accessibility.

Plaintiff's claim regarding the alleged discriminatory motivation underlying the denial of outdoor recreation time for a period of six months fails for the same reasons. Initially, Plaintiff was denied access to outdoor recreation when the wheelchair ramp granting him access to the outdoor yard fell into disrepair. When prison officials were notified about the fact that the wheelchair ramp was impassable, they immediately repaired the ramp and scheduled Plaintiff for daily outdoor recreation time.

That he was denied access to the outdoor recreation yard even after the ramp was fixed is not attributable to any dis-

criminatory animus. Rather, as Plaintiff expresses in exhibit 36, he was housed in the Intermediate Core Program and had his recreation limited to the facilities contained there because of the punitive restrictions imposed on him resulting from his outbursts. Consequently, the Court does not find, on the record before it, any evidence or material issues of fact upon which a reasonable jury could conclude that Defendants violated the ADA when they denied Plaintiff access to the outdoor recreational facilities at Shawangunk. Accordingly, Defendants are entitled to summary judgment on Plaintiff's ADA claims.

### 3. *Rehabilitation Act Claims*

█ Section 504 of the Rehabilitation Act declares, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The act defines an "individual with a disability" as a person that has a "physical or mental impairment, which substantially limits one or more of such person's major life activities; has a record of such an impairment; or is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). In order to state a claim under the Rehabilitation Act, Plaintiff must allege that i) he is disabled; ii) that he was "otherwise qualified" for the benefit sought or for participation in the program; iii) that he was excluded from participation in, denied the benefit of, or subject to discrimination "solely by reason of" his disability; and iv) that the "program or activity receives federal financial assistance". 29 U.S.C. § 794(a); *Clarkson*, 898 F.Supp. at 1036.

As discussed in the section dealing with Plaintiff's ADA claims, there are no facts upon which to conclude that he was denied access to or excluded from participation in any prison program "solely by reason" of his disability. Accordingly, Plaintiff's Rehabilitation Act claims fail for the same reasons as his ADA claims. Thus, even though Defendants' summary judgment papers are limited to the Constitutional question regarding Congress' ability to abrogate state sovereign immunity when it enacted the Rehabilitation Act, a question the Court declines to decide at this time, the Court nevertheless grants their motion for summary judgment as it relates to Plaintiff's Rehabilitation Act claims.[13]

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that Defendants' motion for summary judgment is GRANTED in part and DENIED in part; and it is further

ORDERED that all claims against defendant John Doe are DISMISSED without prejudice to refile; and it is further

ORDERED that all claims against defendant Jane Doe are DISMISSED with prejudice; and it is further

ORDERED that the above captioned matter is referred to the Honorable Gustave J. DiBianco, United States Magistrate Judge, in accordance with Local Rule 72.3(c) and 28 U.S.C. § 636(b); and it is further

ORDERED that the Clerk of the Court serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

---

13. Plaintiff's Fourteenth Amendment equal protection claim also fails for this reason and the Court grants Defendants summary judgment as to it.